**Dana A. ROGERS, Appellant,**

v.

**Richard KING, Director, Department of Revenue, State of Missouri, and the State of Missouri, Respondent.**

**No. WD 35261.**

Missouri Court of Appeals,
Western District.

Nov. 6, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 26, 1984.

Application to Transfer Denied
Feb. 26, 1985.

Andrew J. Gelbach, Warrensburg, for appellant.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and PRITCHARD and LOWENSTEIN, JJ.

PRITCHARD, Judge.

Between May 10 and June 22, 1983, appellant's driver's license was revoked by respondent Director pursuant to § 577.041.-1, RSMo 1978, because of his refusal to take a breathalizer test. Appellant filed a petition for review of the Director's action in the Johnson County Associate Circuit Court on June 22, 1983. On July 13, 1983, the Honorable George Mitchell, judge of that Associate Circuit Court, on his own motion, directed the clerk to transfer the case to the presiding judge of the circuit court "for the purpose of assignment of the case to be heard on the record as provided by law." On July 18, 1983, the presiding judge assigned the case to Judge Mitchell "to be heard on the record under procedures applicable before circuit judges." On August 12, 1983, after a hearing, Judge Mitchell denied appellant's petition for review.

In Point I, appellant contends that the certification to the presiding judge and the reassignment back to Judge Mitchell was without authority, notice or agreement of the parties, and denied him his right to a trial de novo before the circuit court.

Although the associate circuit court is empowered to hear and determine initial-

ly and without assignment petitions for review of driver's license revocations under § 478.225.2(8), RSMo 1978, and appellant did not request a hearing before a court of record in the county in which the arrest occurred under § 577.041.2, there is nothing in the statutes which prevents the procedure of certification and reassignment such as here was done. Regardless of how the case comes to the presiding judge's attention (here on Judge Mitchell's certification on his own motion), § 517.010.2., without qualification, gives this power: "The presiding judge of the circuit may nevertheless in an order of special assignment specifically direct that the practice and procedure applicable before circuit judges shall apply. Such a special assignment order shall only be made if the facilities are available to the associate circuit judge to hear a case on a record so that there would be no right of trial de novo and any appeal could be taken on the record." These statutes are obviously intended to provide for efficient judicial administration of the circuits, and to ensure judicial economy of time in any case. Appellant therefore, under these facts, has no vested right in any available procedure. His appeal is provided to be direct to this court, after the assignment, by § 512.180, and he has not demonstrated any prejudice occasioned by the statutory procedures here employed. He has his statutory appeal, herein considered. Point I is overruled.

In Point II, appellant claims error in Judge Mitchell's denial of his requests for discovery. What happened is this: Appellant filed his petition for review on June 22, 1983. On July 13, 1983, the court overruled the request for discovery, apparently, as may be gleaned from colloquies between the court and counsel, upon the ground that the requests were based upon the criminal rules in this civil matter. Nevertheless, the court on its own motion continued the case to August 12, 1983, to afford appellant "the opportunity to complete discovery as provided by law." The court thereafter transferred the case for assignment by the presiding circuit judge, and the parties were notified, on July 26, 1983, that

the case was set for hearing on the record as a circuit court case on August 12, 1983, at 2:00 p.m.

■ On August 5, 1983, at 4:25 p.m., and at 4:26 p.m., appellant filed interrogatories and a motion to produce documents and items. It seems from colloquy that the secretary of appellant's counsel slipped them under the door of the office of state's counsel, who did not discover them until August 8, 1983. He objected to that attempt at discovery just prior to trial on the ground that the requests were not timely filed, and the court sustained the objection. No error appears. Appellant had from July 13, 1983, to file his requests for discovery. Under both Rules 57.01 and 58.01, the party upon whom requests are served shall have 20 days to respond. Obviously, there would not be available that time for the state to respond. The motion to produce requested that documents and items be produced at least 5 days prior to trial. Considering that state's counsel did not receive it until August 8, 1983, the trial court was entitled to find that discovery could not have been reasonably made by the trial date, August 12, 1983. The trial court did not abuse its discretion in sustaining the objections to discovery in these circumstances. Point II is overruled.

■ In his third point, appellant contends that the trial court erred in admitting a copy of a videotape into evidence which showed him in the booking room at the time the officer attempted to administer the breathalizer test. He says that no proper foundation was laid for the admission of the copy. Officer Shultz testified that the videotape (copy) was an accurate and complete depiction of the events occurring in the booking room of the Warrensburg Police Department. The trial court could reasonably have concluded that the videotape reliably reproduced the events so depicted, that the proper foundation for its admission was laid, and therefore it was within its discretion to admit it. See *State v. Molasky*, 655 S.W.2d 663, 668[7] (Mo. App.1983), and cases cited. Point III is overruled.

By Point IV, appellant contends that there was not sufficient competent and substantial evidence to support the trial court's finding that he unequivocally refused to take the breathalizer test. The evidence shows that appellant was stopped by Officer Shultz in Warrensburg, Missouri, for operating his vehicle with expired license plates. While at the vehicle Shultz observed that appellant was slow and clumsy in his movements, his speech was slow, and there was some odor of alcohol present. Shultz thought appellant was under the influence of alcohol, and placed him under arrest for driving while intoxicated, and he was taken to the police station. The time was shortly after 5:20 p.m., on April 10, 1983. The transcript of the videotape is contained in about 38 pages of the transcript on appeal. It shows that the officers were patient with appellant in allowing him time to make his decision, advising him that a refusal to take the test might result in his license revocation for not less than a year. Appellant was allowed to telephone his attorney twice. That record shows that appellant was argumentative, belligerent and abusive, and tried to delay the administering of the test, requesting that he be permitted to go to the bathroom and have a drink of water. Shultz explained to him that the test would take but five minutes, and he could go to the bathroom and have a drink of water thereafter, and that the procedures did not allow going to the bathroom and drinking water before the test. Shultz testified that he did finally allow appellant to go to the bathroom, going with him, and appellant urinated for about 1½ minutes. Thereafter, Shultz again offered to administer the test but appellant insisted on having a drink of water. Shortly thereafter, the machine was turned off. At one point, appellant received a phone call and told the caller, "I'm not taking that damn test for about an hour. I'm going to tie you up ... I'm not playing their game ..." Shultz asked appellant questions from standard DWI booking procedures, but he did not answer them, but he did do nose touches and straight line walking and recited the alphabet. Shultz requested that appellant take the test at 5:52 p.m., and then permitted him to call his attorney. Shultz told him that at 6:04 p.m., the machine was going to be turned off which was going to be a refusal. At 6:08 p.m., Shultz told appellant to mark a form as to whether he was going to consent to or refuse the test, and appellant said he was consenting to the test, but he wanted a drink—his false teeth were sticking. Shultz thereupon turned off the machine and told appellant that he had refused the test.

■■ Appellant cites *Askins v. James*, 642 S.W.2d 383 (Mo.App.1983), but that case ruled merely that the evidence, if believed, that appellant there blew around the mouthpiece of the machine rather than into it must be determined in accordance with the correct rule of law as to burden of proof which the trial court improperly placed on appellant, hence the remand. In *Arnold v. Director of Department of Revenue*, 593 S.W.2d 624 (Mo.App.1980), the petitioner was not told that smoking, while the machine was warming up, would affect the result of the test, hence smoking was held not to be a refusal. In *Hester v. Spradling*, 508 S.W.2d 194 (Mo.App.1974), a judgment for petitioner that he did not refuse to take the test was affirmed upon facts showing that the officer stated to petitioner's attorney, who arrived at the station 20 to 25 minutes after a telephone call to him and asked if petitioner could take the test, "He's already refused by smoking." The officer did not offer to administer the test and made no further request of respondent to take the test. The facts in these cited cases are inapposite to those here where Shultz continually asked appellant to take the test, but he refrained from doing so by delaying tactics, stating at one time he would not take the test for about an hour, and at another time that he would take it at his convenience. Appellant was advised that procedures would not permit taking water before the test, yet he continued to make that request. *Spradling v. Deimeke*, 528 S.W.2d 759, 766[13] (Mo.1975), states: "There is no mysterious meaning to the word 'refusal'. In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalizer

test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse', or by remaining silent *and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal."* [Emphasis added.] Compare also the delaying tactics of the arrestee in *Walker v. Goldberg,* 588 S.W.2d 83, 85 (Mo.App.1979), with those in this case. In the Walker case, the judgment of revocation of license was affirmed on conflicting evidence of appellant's willingness to take the test as contrasted with his inaction and delaying tactics and equivocation. The same measure of the evidence applies here, and the trial court did not err in affirming the revocation of appellant's license. There is no firm belief that the judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The judgment is affirmed.

All concur.