**STATE of Missouri, Appellant,**

v.

**Jerry Dean IKERMAN, Respondent.**

**No. 50116.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 3, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Larry H. Ferrell, Pros. Atty., H. Morley Swingle, Cape Girardeau, for appellant.

Kenny C. Hulshof, Jackson, for respondent.

SIMON, Presiding Judge.

The trial court granted defendant's pretrial motion to suppress evidence of test results based on a blood sample taken from defendant. The state appeals pursuant to § 547.200 RSMo Supp.1984. (All further references shall be to RSMo Supp.1984 un-

less otherwise indicated.) The state disputes the trial court finding that the blood sample had been taken from defendant in violation of § 577.041 because defendant refused his consent to the blood test and in violation of defendant's *Miranda* rights because the police ignored defendant's request to speak with his counsel. Our review of the trial court's ruling on the motion to suppress is limited to a determination of whether the evidence was sufficient to sustain its finding. *State v. Baskerville,* 616 S.W.2d 839, 843[2] (Mo.1981); *State v. Rainbolt,* 676 S.W.2d 527, 528[2] (Mo.App.1984). We affirm.

Defendant was involved in a traffic accident on January 18, 1985, when his car collided with another. When a policeman first arrived at the scene about 6:45 p.m., paramedics were attending the injured driver of the other car. Defendant, although bleeding and apparently suffering from a head injury, inquired about the other driver, and told the officer that he was alright and that his brakes had failed. When asked if he had been drinking, defendant turned away, then responded he had consumed two beers. Upon inspection of defendant's car, the officer noticed several beer cans, including one opened, and detected a strong odor of alcohol. After checking the brakes, he determined they were fine. The driver of the other car and defendant were taken to the hospital. Defendant's car was taken to the police station where the police inventoried its contents and discovered a baggie of marijuana underneath the floor mat on the driver's side.

Another officer, Officer Eakins, arrived at the hospital around 7:40 p.m. to interview defendant about the accident. He asked defendant what happened at the accident. Defendant claimed his brakes had failed and admitted he had been drinking. Eakins smelled the odor of alcohol on defendant's breath and noticed his eyes were bloodshot and watery. The officer informed defendant that he had reason to believe defendant had been too intoxicated to drive and requested he submit to a blood test. Defendant declined, indicating that he did not want to take the test at that

time. The officer then explained to defendant the consequence of refusing to take the test. About five minutes later, at 7:56 p.m., two other police officers arrived and Officer Eakins informed them that defendant had refused to give a blood sample.

One of these officers, Officer Casteel, had a tape recorder on which he noted the time, date, place, and persons present at the hospital. He advised defendant of his *Miranda* rights, which defendant acknowledged that he understood. A lengthy discussion ensued with defendant eventually agreeing to give the blood sample. After talking briefly with defendant and obtaining his signature on a written consent form, one of the hospital nurses drew a blood sample from defendant. Defendant was subsequently charged with: (1) assault in violation of § 565.060.1(4); (2) possession of marijuana in violation of § 195.020; and (3) driving a motor vehicle with excessive blood alcohol content in violation of § 577.-012. The trial court made extensive findings of fact which shall be related in the discussion of the state's points relied on.

■ The state's first point addresses defendant's motion to dismiss the interlocutory appeal as untimely. The trial court's order was issued on Friday, May 10, 1985, and the state's notice of appeal was filed on Thursday, May 16, 1985. Since § 547.200.4 prescribes that the notice of appeal be filed within five days, Rule 20.01 applies so that Saturdays, Sundays, and legal holidays are excluded in computing the time. Therefore, we conclude that the notice of appeal was timely filed, and deny defendant's motion to dismiss the appeal.

The state's second point contends that the trial court erred in suppressing the blood sample, arguing that the officers had the right to take the blood sample from defendant without his consent, a warrant, or an arrest. The state argues that *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) provides that, where police officers have probable cause to believe defendant has committed a crime in which intoxication is an element and exigent circumstances exist, the taking

of a blood sample in a reasonable manner without consent, warrant, or arrest is constitutionally permissible. If we accept the state's contention that the defendant had not been arrested, we must reject its position that *Schmerber* controls. *Schmerber* supports the general principle that the warrantless extraction of a blood sample without consent but *incident to a lawful arrest* is not an unconstitutional search and seizure and that the results of a blood test performed thereon are admissible in evidence. *See* 384 U.S. at 771, 86 S.Ct. at 1836. (Emphasis added.)

We are troubled by the state's stance that defendant had not been arrested. The trial court assumed a different posture and in its findings of fact states the following:

Although both officers said the defendant was not under arrest, the Court notes that the defendant was then in an emergency room, specifically examination room 5, at the time these officers spoke with him. He told Officer Eakins no to his request; when Officer Casteel spoke with the defendant, there were three officers in the examination room being Eakins, Casteel and Officer Robert McCoy. Although the officers may never have said the "magic words" that the defendant was under arrest, the setting with the number of officers being present, the warnings given by both Eakins and Casteel concerning the loss of driving privileges and the reading of the Miranda rights certainly gives a strong impression that the defendant was under arrest.

Section 544.180 RSMo 1978 provides that "an arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Under the foregoing statute an arrest is made by the defendant submitting to the custody of the officer or by an actual restraint. The statute does not require any particular words to be used by the officer to effectuate the arrest. The determination of whether an arrest has occurred for Fourth Amendment purposes does not depend upon whether the officers announced that they were placing the suspect under arrest. *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824, 835–36 (1979); *United States v. Rose*, 731 F.2d 1337, 1342[6] (8th Cir.), *cert. den.* —— U.S. ——, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984).

The state's emphasis upon the officers' testimony that they did not consider defendant to be under arrest reflects a misunderstanding of the law. A person is "under arrest" from the moment a peace officer takes control of his movements. *State v. Kimball*, 613 S.W.2d 932, 938[7] (Mo. App.1981). Here, although not physically or actively restrained, as with handcuffs, defendant was surrounded by several police officers and given his *Miranda* rights. It is unlikely that defendant reasonably entertained the belief that he was free to go. The officers' actions are tantamount to arrest where their conduct is more intrusive than necessary for an investigative stop. *United States v. Rose*, 731 F.2d at 1342[7]. The evidence was sufficient to support the trial court's finding that defendant was arrested, although not formally.

Accepting the trial court's view that defendant had been arrested, *Schmerber*, standing alone, would compel the conclusion that the warrantless search without consent comports with constitutional due process permitting the blood sample to be taken and to be admissible evidence where defendant has first been arrested. Furthermore, our legislature responded to *Schmerber* by its enactment, like many other states, of an "implied consent" statute, § 577.020, which states in pertinent part:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of Sections 577.010 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were commit-

ted while the person was driving a motor vehicle while in an intoxicated or drugged condition. The test shall be administered at the direction of the arresting law enforcement officer whenever the person has been arrested for the offense.

Thus, under the aegis of *Schmerber,* the implied consent statute authorizing a "search," i.e., the extraction of blood for a blood alcohol test, without a warrant or actual consent does not offend the constitutional guarantees of due process or of freedom from unreasonable search and seizure of one who has first been arrested.

■  However, in tandem with § 577.020, the "implied consent" statute, the Missouri legislature also enacted § 577.041, a "refusal" statute. Section 577.041 provides, in part:

> 1. If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given.

Our legislature has determined that while anyone who operates a motor vehicle on the public roads of this state impliedly consents to the taking of a chemical test as provided by § 577.020, one may expressly refuse to take the test pursuant to § 577.041. Although a driver may refuse to take the chemical test, his driving license may be automatically revoked for doing so under § 577.041.1. It is acceptance of this condition in exchange for receiving a license that constitutes the "implied consent" by which the statute is known. Thus, we conclude that a blood sample may be taken without a warrant to test for intoxication without offending federal constitutional guarantees and Missouri statutes where the defendant is under arrest and has not negated his implied consent under § 577.020 by invoking his right of refusal under § 577.041.

■  The state's position that defendant had not been arrested attempts to sidestep the application of Missouri's implied consent and refusal statutes which apply to persons "if arrested," § 577.020, and "under arrest," § 577.041. The state argues the absence of arrest precludes the application of these two statutes, so that the constitutional mandate of *Schmerber* controls. Under its view, the state concludes that *Schmerber* permits warrantless search and seizure without consent of persons not under arrest. As mentioned earlier, our interpretation of *Schmerber* requires the warrantless search and seizure be incident to an arrest. The state's second point that no warrant, arrest, or consent is required to permit the blood sample extraction is meritless.

The state's third point disputes the trial court's decision to bar the test results after finding: (1) that defendant had refused his consent to the test, and (2) that the officers had violated defendant's right to counsel. The trial court's findings of fact that defendant refused his consent were as follows:

> Police Officer Carl Eakins testified that he talked with the defendant at St. Francois Medical Center. Officer Eakins asked the defendant for a blood sample, and the defendant replied to the effect that he didn't think he wanted to take that test. Thereafter, Officer Eakins advised defendant, apparently in accordance with § 577.041, that the Department of Revenue may take his license for failure to take the test. Thereafter, police officer Curt Casteel came to St. Francois Medical Center. Officer Eakins advised Casteel that he had asked the defendant for a blood sample and defendant had said no. Although both Officers Eakins and Casteel stated at the hearing that defendant was not under arrest, Officer Casteel read the Miranda rights to defendant. Only after Casteel told the defendant that if no sample was given that he could still get a ticket for DWI did the defendant agree to give a blood sample. This Court finds that the blood sample was taken in violation of that part of Section 577.041 which says:

If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, ... then none shall be given.

■ The state argues that defendant did, in fact, consent to the extraction of the blood sample and did not refuse to give the blood sample. There is no mysterious meaning to the word "refusal;" in the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. *Rogers v. King*, 684 S.W.2d 390, 393–94[5] (Mo. App.1984), quoting *Spradling v. Deimeke*, 528 S.W.2d 759, 766[13] (Mo.1975). The trial court accepted defendant's position that defendant's subsequent acquiescence following on the heels of his initial refusal was an involuntary consent. Once the voluntariness is challenged, the state carries the burden of proving the voluntariness of the consent by a preponderance of the evidence. *See Rainbolt*, 676 S.W.2d at 528. In light of our preceding recitation of facts, we find the state failed to carry its burden and we reject the state's position that the trial court erred in finding that defendant had refused to take the test.

The state's third point also challenges the trial court's finding that defendant's right to counsel had been violated. The trial court found as follows:

It is also clear that the defendant asked to speak with counsel before giving his consent to the blood test. It does not serve the law enforcement system well to advise the defendant of his Miranda rights and then to ignore a request to invoke a right. Here, the officer advised the defendant: "If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish." Before answering any questions, the defendant said: "Is there a lawyer here that I could talk to?" Officer Casteel replied: "Well, we can't advise you obtaining a lawyer if you want to get one, go ahead, but ...," to which defendant replied: "I, I can't afford one." The officer then talked about the blood sample and did not follow through with the defendant's right to a lawyer.

This Court finds that the blood sample obtained from the defendant was obtained in violation of § 577.041 and further that the rights of the defendant under Miranda were not furnished to defendant.

■ The issue of the right to consult counsel before submitting to a blood alcohol test is often raised under implied consent statutes; however, no clear majority rule prevails. *See* Annot. 97 A.L.R.3rd 852 (1980) and cases cited therein. Missouri has held that an arrested person does not have a *constitutional* right to consult with an attorney prior to deciding whether or not to submit to a breathalyzer test and does not have a constitutional or statutory right to have an attorney present at such test nor to condition his consent to take the test on an attorney being present. *Spradling v. Deimeke*, 528 S.W.2d 759, 764[7] (Mo.1975). However, our Supreme Court has reiterated that under the statutes of this state and the rules of this court an arrested person does have the right to consult with counsel or others on his behalf, and the arresting authorities do not have the right to prevent him from doing so. *Id.* [8]. Section 544.170 RSMo.1969 and Rules 21.14 and 37.89, the statute and rules relied upon in 1975 when *Deimeke* was decided remain substantially the same today. (Rule 21.14, repealed June, 1979, was replaced by current Rules 21.11, 22.06, and 31.01). These provisions confer a limited right to the defendant to consult with counsel, notwithstanding the conclusion that no *constitutional* right to assistance of counsel exists.

■ In the instant case, defendant first asked to call his mother, then an attorney. The police made no effort to advise defendant that a telephone was available for him to call his lawyer or anyone else he wished to consult. Instead, the officer talked about the blood sample, ignoring defendant's inquiries about an attorney. Sufficient evidence supports the trial court's determination that defendant's right to consult counsel or someone on his behalf was violated. *Cf. Curry v. Goldberg*, 614

S.W.2d 318, 319[1] (Mo.App.1981) (held no violation of right to counsel in finding defendant-motorist's actions constituted a refusal where, after the arresting officer advised the motorist that he had no authority to appoint a lawyer for him but the telephone was available for the motorist to use to call the lawyer or anyone else with whom he wished to consult, the motorist declined to use the telephone, but continued to refuse to submit to a breathalyzer test until he got court-appointed lawyer.) Here, no opportunity was given defendant to consult his mother, an attorney, or anyone. The state's final point is denied.

Judgment affirmed.

KELLY and KAROHL, JJ., concur.