STATE of Missouri, Appellant,

v.

Jerome E. SETTER, Respondent.

No. WD 38151.

Missouri Court of Appeals,
Western District.

Oct. 7, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for appellant.

John E. Redmond, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and GAITAN, JJ.

MANFORD, Judge.

This is an appeal by the State of Missouri from a judgment in the form of an order suppressing evidence in a criminal proceeding. The appeal is authorized and presented pursuant to § 547.200, RSMo Supp.1984. The judgment is reversed and the cause is remanded with directions.

Appellant alleges that the trial court erred in sustaining respondent's motion to suppress. Appellant presents two points specifically which, in summary, charge that the trial court erred (1) in applying § 577.039, RSMo Supp.1984, because said statute has no application to proceedings other than driving under the influence of intoxication cases, and (2) in that the warrantless administration of a blood alcohol test was constitutionally permissible.

The pertinent facts are as follows:

At approximately 1:23 a.m. on May 9, 1985, Jarrett Jones, a Kansas City, Missouri police officer, was dispatched to the scene of a vehicular collision at the intersection of 51st Street and Noland Road in Kansas City, Missouri. The officer arrived at 1:47 a.m. and observed a white/blue 1983 Ford pickup truck facing southwesterly but across the northbound lane of Noland Road. He also observed a person lying on the roadway just west of the passenger's side of the pickup truck, and another person lying on the roadway side of the driver's side. He also observed a green 1973 Dodge pickup truck facing northwesterly but across the northbound lane of Noland Road. From his investigation, he determined that the Ford pickup truck had been driven by one Michael Settle. The party he had previously observed on the driver's side of the Ford pickup truck was identified as respondent. The officer, from his investigation, learned that respondent had been driving the Dodge pickup.

Respondent was taken to St. Luke's Hospital in Kansas City, Missouri, by helicopter. The officer subsequently proceeded to the emergency room of the hospital. At the hospital, the officer observed respondent and as he was being treated by nurses and doctors, respondent was combative with them. The officer was able to observe a faint odor of alcohol on respondent's breath. Later at trial, the officer, over objection, was permitted to state that he had reasonable grounds to believe that respondent was intoxicated while operating his pickup truck. It should be noted that while en route to the hospital, the officer had been advised that the other driver, Michael Settle, had died as a result of the collision.

During his first encounter with respondent at the hospital, the officer placed respondent under arrest and then read the *Miranda* warning to respondent. The officer further requested that respondent submit to having his blood drawn to determine the blood alcohol content. The officer testified later that while respondent was conscious, he (the officer) noticed that respondent did not understand what he (the officer) was saying. Respondent had no conversation with the officer.

There was no indication from respondent that he consented to the taking of a blood sample or that he refused the taking of the blood sample. The officer then directed a doctor to take a blood sample from respondent. This was accomplished in the presence of the officer. The officer then sealed the blood sample and forwarded it to the Regional Crime Laboratory. The record indicates that respondent was placed under arrest *prior to* the *Miranda* warning, and prior to the officer reading to respondent the DWI waiver and the order for a blood sample. The blood sample was ordered and the sample secured at approximately 4:00 the morning of the accident, or some three and one-half hours after the officer was dispatched to the scene. The officer also stated that he issued no traffic summons to respondent because he had to get the results of the blood tests prior to issuing the summons. The officer was asked if he set a court date, and he responded "no" since he could not set a court date on manslaughter cases.

Respondent was indicted by a grand jury on a charge of manslaughter. By agreement and through his attorney and the prosecutor, respondent voluntarily surrendered to avoid arrest on the manslaughter charge. The record is clear and the parties do not dispute the fact that the officer did not secure the blood sample under a warrant, nor did the officer effect respondent's arrest under warrant. During the prosecution of the manslaughter charge, respondent filed a motion to suppress the blood sample previously secured at the *direction* of the officer. The trial court, in sustaining the motion, entered the following order judgment:

> The Court this day takes up Defendant's motion to suppress. After having duly considered the evidence heard by the Court on January 23, 1986 and the briefs filed by counsel, the Court hereby SUSTAINS said motion for the reason that the arrest of the Defendant, if any, was made more than 1½ hours after the

alleged violation, contrary to the requirement of Sec. 577.039 R.S.Mo. Accordingly, there was no implied consent on the part of the Defendant to take the blood sample pursuant to Sec. 577.020.1 R.S.Mo.

> It is therefore ORDERED that evidence of the blood sample taken from the Defendant be suppressed and adjudged inadmissible at the trial of this case.

In support of its point (1), appellant argues that § 577.039 does not apply to arrests for involuntary manslaughter. Appellant's position is that there is no ambiguity within the language of § 577.039, and thus it plainly applies only to offenses prescribed by § 577.010 (driving while intoxicated) and § 577.012 (driving with excessive blood alcohol content).

Section 577.039 reads as follows:

**577.039. Arrest without warrant, lawful, when**

An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.

In further support of this argument, appellant cites to *State v. Harris*, 670 S.W.2d 73, 78 (Mo.App.1984). This question was presented to this court in *Harris*[1] and this court declared:

> The first of the four subpoints under point two preserved for appellate review charges that the results of the breathalyzer test should have been suppressed because the test was administered some three and one-half (3½) hours after the

---

1. In *State v. Harris,* this court was dealing with the former statute, § 577.040, which has been repealed and replaced with § 577.039. This court notes that the successor statute, § 577.039 carried forward the substance of § 577.040.

fatal accident. Defendant's attendant argument is highly convoluted and the only authority cited for its support is § 577.040, RSMo 1978 (in effect both at the time of the offense and at the time of trial). Seizing upon the language in § 577.040, supra, that "[A]n arrest without a warrant [for the offense of 'driving while intoxicated', § 577.010, RSMo 1978] must be made within one and one-half hours after such claimed violation occurred", defendant summarily contends that a breathalyzer test administered more than one and one-half hours after the fatal accident was inadmissible. Defendant's argument is untenable for several reasons. First, defendant was arrested for manslaughter rather than driving while intoxicated. Second, defendant, by extrapolation, has sought to extend the meaning of the referred to statutory language far beyond the explicit intent and purpose of the statute. (Omitting footnotes)

Respondent argues that *Harris* must be distinguished because in *Harris,* the defendant, after a lapse of three hours, *voluntarily* submitted to a chemical test. Respondent contends that in *Harris,* the defendant was charged under the former section § 565.005, RSMo 1978, which reads, "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide shall be deemed manslaughter."

Respondent points out that operating a motor vehicle while intoxicated under the prior statute was not an issue of manslaughter in *Harris,* nor was implied consent. Respondent further urges that since he was charged under § 565.024, RSMo Supp.1984, the state has the burden of proving that a person charged thereunder operated a motor vehicle in an intoxicated condition. Section 565.024 reads:

**565.024. Involuntary manslaughter, penalty**

1. A person commits the crime of involuntary manslaughter if he:

(1) Recklessly causes the death of another person; or

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person; or

(3) Causes the death of an unborn quick child by any injury to the mother of such child which would be murder if it resulted in the death of such mother.

2. Involuntary manslaughter is a class C felony.

Respondent then cites to § 577.001.2, which reads:

**577.001. Chapter definitions**

\* \* \* \* \* \*

2. As used in this chapter, a person is in an "intoxicated condition" when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof.

Respondent further cites to § 577.020.1, and from that asserts that § 577.039 is within § 577.020.1. Section 577.020.1 reads:

**577.020. Chemical tests for alcohol content of blood-consent implied-administered, when, how**

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition. The test shall be administered at the direction of the arresting law enforcement officer whenever the person has been arrested for the offense. . . .

Thus, respondent concludes that § 565.-024.1(2) requires proof of operating a motor vehicle while intoxicated. Respondent

argues that the so-called implied consent law, § 577.020, applies because of the requirements of § 565.024.1(2). Respondent then asserts that § 577.039, being between § 577.020 and § 577.041, renders § 577.039 applicable to *any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition.*

Stated in another manner, respondent contends that § 577.039, especially the time limitation of one and one-half hours where there has been a warrantless arrest, applies to violations charged under § 565.024.

Respondent points out that prior to the 1982 revision of § 577.020, the statute made reference only to § 577.030 and § 577.050, and specifically omitted § 577.-039. Respondent argues that this question has been answered by the ruling in *State v. Ikerman,* 698 S.W.2d 902 (Mo.App.1985).

This court cannot agree with respondent that *Harris* is not applicable. This conclusion becomes apparent from the discussion of § 577.039 *infra.* In addition, the court cannot agree with respondent that *Ikerman* is dispositive of the present case. In the first instance, *Ikerman* did not involve the consideration of § 577.039. In addition, *Ikerman* involved a very distinct factual difference from the instant case. In the instant case, the evidence supports a finding that respondent did not refuse consent to a blood sample. The officer testified that he placed respondent under arrest, and although the officer concluded that respondent did not seem to understand, the officer was asked and responded as follows:

Q. If he (meaning respondent) was able to, alert and agile, to walk out that hospital door, would you have arrested him as you would any defendant?

A. Yes, I would.

Further, in the instant case, there is no evidence of any consent by respondent to submit to a blood sample and blood testing. This is contrary to the factual finding in *Ikerman* where the trial court concluded from the evidence that the defendant's consent had not been given. Thus, the instant case does not involve the same issues as did *Ikerman* and *Ikerman* does not control. In fact, the only viable similarity between *Ikerman* and the instant case is that both cases recognize that § 577.020, commonly called the "implied consent law", is constitutionally valid.

As can be observed, *Harris* merely declared in general terms that § 577.040 (now § 577.039) did not apply to a manslaughter case. While that rationale was sound in *Harris* and still remains sound, this court recognizes the need in the present case to provide a more detailed explanation of why § 577.039 does not apply.

Section 577.039, by its very wording, makes it clear that a warrantless arrest within the context of the section, applies *only* to violations of § 577.010 or § 577.-012. This statute provides that "an arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol *for* a violation of § 577.010 or § 577.012 is lawful ..." The statute then provides further, "however *for any such arrest* ..." which again reveals language of limitation and thus prescribes that the time limitation shall apply only to arrest for violation of § 577.010 or § 577.-012.

■ It is evident that the General Assembly, in its enactment of § 577.039, intended that warrantless arrests under this section apply only to violations of § 577.010 or § 577.012 and therefore, the General Assembly had in mind specific situations and did not intend that warrantless arrests and the time limitation of one and one-half hours would apply to all warrantless arrests of all other types of offenses. Under our rules of statutory construction, "the express mention of one thing implies the exclusion of another." *State v. Rellihan,* 662 S.W.2d 535, 545 (Mo.App.1983). It is fair to hold, as this court does herein, that the inclusion of §§ 577.010 and 577.012 for warrantless arrests and the prescribed time of one and one-half hours for violations of § 577.010 or § 577.012, limits the application of both the statutory warrantless ar-

rest and the time of one and one-half hours to the specific violations of § 577.010 and § 577.012, and that neither applies to any other offenses. *See Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 145 (Mo. banc 1980).

■ Thus, this court concludes that § 577.020 is applicable to the facts and circumstances of the instant case; and further that while § 577.020 recites "subject to the provisions of § 577.020 to § 577.041" which obviously includes § 577.039, this latter section (§ 577.039) contains or has within it further limiting provisions, thus rendering § 577.039 applicable to only the offenses enumerated under § 577.010 and/or § 577.012, and does not apply to that portion of § 577.020 which reads, "if arrested *for any offense* arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition." Stated another way, when any person is arrested for any offense other than those prescribed under § 577.010 and/or § 577.012, by the use of a motor vehicle while the person was intoxicated or drugged, then the limitations prescribed in § 577.039 shall not apply. If, under the given facts and circumstances of a particular case, the party charged gives consent to blood testing, the test results are admissible at a later trial. If the person does not have the ability to refuse, then a test can be performed and it is deemed that his consent has not been refused as prescribed by § 577.033 and § 577.037, RSMo Supp. 1984. If a person refuses to submit to a test, then his license is subject to revocation under § 577.041, but further, upon his arrest and as an incident to his arrest without a warrant, the person is subject to having a sample of his blood taken without his consent or a warrant, and said blood sample is admissible in evidence. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), *Ikerman, supra.*

■ As a further contention, respondent asserts that the arresting officer did not have probable cause to arrest respondent or if he did have probable cause, that no valid arrest occurred. The record dispels both contentions by respondent. The officer arrived at the scene to find citizens, firemen, and medical emergency personnel already at that location. He also observed two persons lying on the roadside. One of these persons was "lying on the roadway side of the driver's side of the vehicle ..." The officer further testified that he talked to citizens, fire department personnel and medical personnel who had arrived prior to his (the officer's) arrival. He testified that he observed respondent as the party lying "on the roadway on the driver's side of the '83 Ford pickup truck." While en route to a local hospital, the officer was informed that respondent was the owner of the Dodge pickup truck. Prior to his arrival at the local hospital, the officer was also advised of the death of the other driver. At the hospital, the officer was able to observe respondent and that respondent was combative with the nurses and doctors. The officer was in the presence of respondent and observed a faint odor of alcohol on respondent's breath. The officer testified that, from the following facts, he had formed reasonable grounds to believe that respondent had operated the 1983 Dodge pickup truck while intoxicated. Respondent's pickup truck was in the wrong lane at the time of impact (determined from measurements and debris). The officer determined from citizens, fire personnel, and medical personnel, that respondent had been removed from the operator's side of the Dodge pickup. It cannot be concluded, as respondent urges, that the officer lacked probable cause to arrest him.

■ As to his final assertion that no valid arrest occurred, the record again dispels respondent's contention. The officer testified that after he arrived at the hospital and had observed respondent, as noted above, he stood over respondent, placed respondent under arrest, and read respondent his *Miranda* warning. He then asked respondent to submit to having blood drawn for purposes of determining respon-

dent's blood alcohol content. Respondent made no response to the officer, including the officer's request for a blood sample. The officer testified that respondent, due to his physical condition, was not handcuffed or taken away. The officer testified that because of his injuries, it was obvious that respondent would remain in the hospital. The officer also stated that had respondent been able to leave, respondent would have been handcuffed and taken away to a local police station.

■ Respondent would suggest that since there was no actual restraint of himself that there was no actual arrest. He further suggests that there was no submission by him to the officer's authority. In addition, he argues that there was no showing that he waived his *Miranda* warning or that he waived his right to counsel. While these latter arguments seem to suggest that the blood sample taken from respondent is inadmissible, that is not the case due to the ruling in *Schmerber*. The blood sample herein was not evidence related to some *communicative act or writing*. No violation of the Fifth and Fourteenth amendments occurred.

■ As to the right of counsel issue, there is nothing upon this record to even suggest, let alone establish, respondent's request to consult counsel. Respondent's mere assertion that he did not waive that right does not suffice. While it is true that Missouri, under § 544.170, RSMo 1978 and Rules 21.11, 22.06 and 31.01, provides that an accused does have a right to consult an attorney, that has been construed to mean that the authorities may not deny that right if exercised. It does not mean that an accused can invoke that right (as herein) by his mere silence.

Our courts have determined "that an arrested person does not have a constitutional right to consult with an attorney prior to deciding whether or not to submit to a breathalyzer test and does not have a constitutional or statutory right to have an attorney present at such test nor to condition his consent to take the test on an attorney being present." *Ikerman, supra,*

698 S.W.2d at 907. *See also Spradling v. Deimeke,* 528 S.W.2d 759, 764 (Mo.1975).

Under the facts and circumstances herein, it cannot be concluded, as suggested by respondent, that there was no valid arrest because respondent was not restrained, or because he did not submit to the officer's authority. The facts reveal that the officer placed respondent under arrest and read the *Miranda* warning. There was no need to *physically restrain* respondent because his injuries prevented him from leaving the hospital. When asked if respondent was free to leave, the officer testified that he would have placed respondent in handcuffs and taken him to jail. It must be concluded under all the facts and circumstances herein that a valid arrest did occur. Thus, the search and seizure of respondent's blood did arise incidentally to a lawful arrest. *State v. Copeland,* 680 S.W.2d 327 (Mo. App.1984), cited by respondent, does not apply and hence does not control under the facts of this case.

Concerning respondent's contention that the search (i.e., taking of blood) was invalid due to no showing of a waiver of the *Miranda* warning, this contention is ruled squarely by *Schmerber* in that the taking and later use of the blood sample was not violative of the Fifth and Fourteenth amendments which serve as the basis against self-incrimination prescribed by *Miranda.* As regards the waiver of counsel related to the alleged invalidity of the search and seizure of respondent's blood, there was no violation of respondent's rights because there is no showing he was denied the right to consult an attorney. Absent respondent's request (it was shown on the record that the officer advised respondent of his right to counsel as per the *Miranda* warning) to consult an attorney and a denial of such, there was no violation of respondent's rights. *Ikerman* and *Spradling, supra.*

In conclusion, it is the finding of this court that the trial court erred in sustaining respondent's motion to suppress for the following reasons: Section 577.020 is applicable to any offense when, during the com-

mission thereof, the arresting officer had reasonable grounds to believe the same was committed while the person was driving while in an intoxicated or drugged condition. This includes, but is not limited to, § 565.024 under which respondent stands charged. It is further found that the terms and conditions prescribed by § 577.039 are limited only to the offenses set forth in § 577.039, to wit, those offenses set forth within § 577.010 and § 577.012, and hence § 577.039 does not apply to "any offense" as that term is used in § 577.020. Thus, § 577.039 has no application to the instant proceedings. *Harris, supra.* The securing of respondent's blood sample was constitutionally permissible under *Schmerber, supra.* The assertions of respondent that no valid arrest occurred is found to be without merit under all of the particular facts and circumstances shown upon this record. There was no violation of respondent's *Miranda* rights, nor of his right to counsel as shown above.

Both points raised by appellant are sustained to the favor of appellant and the order judgment sustaining respondent's motion to suppress is in all respects reversed. This cause is remanded to the circuit court with directions that upon further proceedings, if any, the blood test which serves as the basis for this appeal shall be admissible as evidence in those future proceedings, if any, for and upon the reasons set forth in this opinion.

All concur.