Harold Ray **MURPHY**, Appellant,

v.

**DIRECTOR OF REVENUE**, State of Missouri, Respondent.

No. WD 64266.

Missouri Court of Appeals,
Western District.

June 21, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2005.

Application for Transfer Denied
Sept. 20, 2005.

**508**

Patrick E. Richardson, Kirksville, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Tracey A. Dujakovich, Assistant Attorney General, Kansas City, MO, for respondent.

Before ELLIS, P.J., SPINDEN and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

After a trial *de novo,* the Circuit Court of Linn County entered a judgment sustaining the Director of Revenue's ("Director") revocation of Harold Murphy's ("Murphy") driver's license for excessive blood alcohol content. On appeal from that judgment, Murphy claims that the trial court erred in admitting evidence of toxicology test results based on the blood sample obtained from Murphy by the arresting officer after Murphy refused consent.

As set forth below, we hold that under the plain language of section 577.037, the results of the blood test taken by the arresting officer in violation of section 577.041,[1] were inadmissible in the license revocation proceeding under section

---

1. Unless otherwise noted, statutory references are to RSMo Cum.Supp.2004.

302.505.[2] The trial court's judgment is reversed.

## Background

On the evening of July 25, 2003, Murphy was involved in a two-vehicle injury collision in Linneus, Missouri. When Trooper K.C. Kelly of the Missouri Highway Patrol arrived to investigate, he went to speak to Murphy, who was sitting in a yard next to the accident scene while emergency workers worked to free Murphy's passenger and the other driver from the vehicles. Trooper Kelly noticed that Murphy's breath smelled of alcohol, his eyes were bloodshot and glassy, his pupils appeared dilated, and his speech was slurred at times. Murphy admitted to drinking "one beer" prior to the accident. Due to Murphy's injuries to his left arm, Trooper Kelly asked him to perform only one field sobriety test, the results of which indicated Murphy was impaired.

Trooper Kelly placed Murphy under arrest for two counts of second-degree assault.[3] After paramedics treated Murphy's injuries and placed him inside the ambulance, Trooper Kelly advised Murphy of his rights under the implied consent law, sections 577.020 to 577.041. Murphy refused to give a blood sample. Nevertheless, Trooper Kelly directed a paramedic to take a sample of Murphy's blood. The results of the toxicology test on Murphy's blood sample showed that his blood alcohol content (BAC) was .134%.

Pursuant to section 302.505.1, the Director revoked Murphy's license for one year for driving a motor vehicle while his BAC was over .08 percent. Following an administrative hearing that resulted in a determination adverse to Murphy, Murphy filed a petition for de novo review of all issues under section 302.535.

On February 24, 2004, the Circuit Court of Linn County conducted a trial *de novo* on Murphy's petition. No witnesses testified. The parties stipulated to admission of the certified Department of Revenue records under section 302.312, RSMo 2000, subject to Murphy's objection to the admissibility of the blood test results contained therein.[4] The only issue at the trial *de novo* was whether the toxicology results of Murphy's blood tests were admissible to prove his BAC was over .08 percent for revocation of his license under section 302.505. The trial court entered judgment summarily sustaining the Director's revocation of Murphy's driver's license. This appeal follows.

## Discussion

 In order to make a prima facie case for the revocation of Murphy's license

---

**2.** Section 302.505.1 provides in relevant part: "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500[.]"

**3.** Section 565.060.1(4) RSMo 2000 provides: "A person commits the crime of assault in the second degree if he ... [w]hile in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor

vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself[.]" The passenger in Murphy's vehicle and the driver of the other vehicle involved in the collision both required hospital treatment for their injuries.

**4.** The parties also stipulated that Murphy's driving record showed one prior alcohol-related enforcement contact during the immediately preceding five years to allow for revocation. § 302.525.2(2); *Smyser v. Dir. of Revenue,* 942 S.W.2d 380, 383 (Mo.App. W.D.1997).

under section 302.505, the Director had the burden of proving by a preponderance of the evidence that Murphy was: (1) arrested on probable cause to believe that he was driving (2) while the alcohol concentration in his blood, breath, or urine was .08 percent or more by weight. *Lawson v. Dir. of Revenue*, 145 S.W.3d 443, 445 (Mo. App. W.D.2004). Murphy claims that the blood test results were inadmissible to prove the second element of the Director's prima facie case because once he was arrested and refused to submit to the blood test, Trooper Kelly lacked authority under section 577.041 to order the paramedic to take a sample of his blood.

■ The Director concedes that Murphy refused consent, but she argues that Murphy improperly seeks exclusion of the toxicology test results by invocation of the exclusionary rule, a criminal law concept, in a civil proceeding. In *Riche v. Director of Revenue*, 987 S.W.2d 331, 333 (Mo. banc 1999), our supreme court examined the court-made exclusionary rule, which "requires that evidence obtained in violation of the fourth amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure." (Citing *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). *Riche* acknowledged the applicability of the exclusionary rule in criminal prosecutions for driving while intoxicated "to deter unlawful police conduct." *Id.* However, *Riche* also considered the fact that because "the exclusionary rule is prudential rather than constitutionally mandated, it will not be applied where its 'substantial social costs' outweigh its deterrent benefits." *Id.* at 334. *Riche* concluded, "the costs of excluding unlawfully seized evidence in a proceeding pursuant to section 302.505 outweigh the potential benefits of applying the exclusionary rule. Neither the fourth amendment nor the Missouri Constitution requires that the exclusionary rule be applied to proceedings under section 302.505[.]" *Id.* at 336.

*Riche* differs factually from our case. In *Riche*, the driver urged the exclusion of evidence on constitutional grounds because he was stopped without probable cause. Murphy argues that his blood test was taken in violation of section 577.041, rendering it inadmissible in the license revocation proceeding because of the plain language of the applicable statutes.

Murphy does not dispute that the exclusionary rule would not be applicable in this civil proceeding to exclude the results of his blood test on constitutional grounds. However, the issue before us does not involve the consideration of a violation of Murphy's constitutional rights. Rather, our determination of whether the trial court erred in admitting the test results on Murphy's blood sample drawn despite his explicit refusal involves statutory interpretation.

As explained below, our legislature has promulgated statutes—sections 577.020 to 577.041—limiting the authority of law enforcement to request the taking of a blood sample to determine an arrested driver's BAC. Additionally, in section 577.037, our legislature specifically provided for the admissibility of test results obtained pursuant to exercise of that authority in a proceeding to suspend or revoke a driver's license under Chapter 302. Under these statutes, the issue is not viewed in the ordinary search and seizure context. The issue is viewed solely in terms of consent. We hold that under the plain language of the relevant statutes as applied to the facts of this case, Murphy's blood test results were inadmissible in the proceeding to revoke his license under section 302.505.

■ Under Missouri law, once an arrested driver explicitly negates or withdraws his implied consent to a blood test

as provided for in section 577.020, then, pursuant to section 577.041.1, "none shall be given." In other words, once the driver refuses consent to a blood test, the law enforcement official lacks authority to authorize the withdrawal of blood to test for BAC. *See Blanchard v. Dir. of Revenue*, 844 S.W.2d 589, 590 (Mo.App. E.D.1993) (explaining that under section 577.041, "an officer is without authority to administer the test once it is refused").

In *State v. Ikerman*, 698 S.W.2d 902, 904 (Mo.App. E.D.1985), the Eastern District considered the State's contention on appeal in a criminal proceeding that law enforcement officers "had the right to take the blood sample from [the] defendant without his consent, a warrant, or an arrest." The court noted:

> *Schmerber* [*v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) ] supports the general principle that the warrantless extraction of a blood sample without consent but incident to a lawful arrest is not an unconstitutional search and seizure and that the results of a blood test performed thereon are admissible in evidence.

*Id.* at 905 (emphasis omitted). After recognizing this general principle and finding that the trial court had not erred in determining that the defendant had been arrested, *Ikerman* continued:

> Accepting the trial court's view that defendant had been arrested, *Schmerber*, standing alone, would compel the conclusion that the warrantless search without consent comports with constitutional due process permitting the blood sample to be taken and to be admissible evidence where defendant has first been arrested.... [O]ur legislature responded to *Schmerber* by its enactment, like many other states, of an "implied consent" statute, § 577.020, which states in pertinent part:

"1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of Sections 577.010 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition. The test shall be administered at the direction of the arresting law enforcement officer whenever the person has been arrested for the offense."

Thus, under the aegis of *Schmerber*, the implied consent statute authorizing a "search," i.e., the extraction of blood for a blood alcohol test, without a warrant or actual consent does not offend the constitutional guarantees of due process or of freedom from unreasonable search and seizure of one who has first been arrested.

However, in tandem with § 577.020, the "implied consent" statute, the Missouri legislature also enacted § 577.041, a "refusal" statute. Section 577.041 provides, in part:

"1. If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given."

Our legislature has determined that while anyone who operates a motor vehicle on the public roads of this state impliedly consents to the taking of a chemical test as provided by § 577.020,

one may expressly refuse to take the test pursuant to § 577.041. Although a driver may refuse to take the chemical test, his driving license may be automatically revoked for doing so under § 577.041.1. It is acceptance of this condition in exchange for receiving a license that constitutes the "implied consent" by which the statute is known. Thus, we conclude that a blood sample may be taken without a warrant to test for intoxication without offending federal constitutional guarantees and Missouri statutes where the defendant is under arrest *and has not negated his implied consent under § 577.020 by invoking his right of refusal under § 577.041.*

*Id.* at 905–06 (emphasis added). *Ikerman* concluded that the trial court did not err in barring admission of the defendant's blood test results because, as found by the trial court, " 'the blood sample was taken in violation of that part of Section 577.041 which says: "If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, … then none shall be given." ' " *Id.* at 906–07; *accord State v. Smith,* 134 S.W.3d 35, 36 (Mo.App. E.D.2003) (holding, "the clause, 'none shall be given,' in the refusal provision of the Implied Consent Law, Section 577.041 RSMo (Supp.2002), prohibits warrantless tests authorized by law enforcement officers pursuant to Chapter 577, but does not prohibit a court from issuing a search warrant to obtain samples of a defendant's blood for chemical testing").

This case involves a prohibited warrantless blood draw authorized by Officer Kelly despite Murphy's express negation of his implied consent. The question is: In light of *Riche,* are the test results on the prohibited blood draw admissible in the civil proceeding to revoke Murphy's driver's license under Chapter 302?

Were it not for section 577.037 discussed below, we would be inclined to agree with the Director that the *Riche* holding is applicable to the extent that Murphy seeks invocation of the exclusionary rule for the warrantless extraction of his blood in violation of section 577.041, i.e., Murphy seeks to deter Trooper Kelly or punish him for violation of his authority to authorize a blood draw. *Smith* and *Ikerman* both involve criminal proceedings, such that the exclusionary rule would be applicable to bar introduction of the results of the tests done on blood drawn without a search warrant in violation of section 577.041 after the defendant explicitly refused consent. However, under *Riche,* the exclusionary rule is not applicable in civil proceedings to suspend or revoke drivers' licenses under Chapter 302.

But, as previously stated, we are not concerned with application of the exclusionary rule for any constitutional violation of Murphy's rights. Rather, the analysis of the plain language of sections 577.020 and 577.041 in *Smith* and *Ikerman* becomes relevant in this civil proceeding due to the plain language of section 577.037.

Section 577.037, which is part of Missouri's Implied Consent Law (sections 577.020 through 577.041), governs the admissibility of chemical test results to establish a driver's BAC in license suspension or revocation proceedings under Chapter 302. Section 577.037.1 provides in relevant part:

[I]n any license suspension or revocation proceeding pursuant to the provisions of chapter 302, RSMo, arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, *the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood,* breath, saliva or urine *is admissi-*

*ble in evidence.* . . . If there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.

(Emphasis added.) Section 577.037.4, narrows this broad declaration of admissibility of BAC test results in proceedings under Chapter 302 by providing:

A chemical analysis of a person's breath, blood, saliva or urine, *in order to give rise to the presumption or to have the effect provided for in subsection 1 of this section, shall have been performed as provided in sections 577.020 to 577.041 and* in accordance with methods and standards approved by the state department of health and senior services.

(Emphasis added.) Interpretation of section 577.037 is critical to our analysis of the issue raised by Murphy, which, from our research, appears to be an issue of first impression.

■ We "ascertain [our] legislature's intent by considering the plain and ordinary meaning of the words in the statute." *Cox v. Dir. of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003); *see also* § 1.090 RSMo 2000, which states: "Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

By diagramming the words used in section 577.037.4, we can better ascertain legislative intent:

A chemical analysis of a person's breath, blood, saliva or urine, in order to **[a]** give rise to the presumption or **[b]** to have the effect provided for in subsection 1 of this section, **[c]** shall **[d]** have been performed as provided in sections 577.020 to 577.041 and **[e]** in accordance

with methods and standards approved by the state department of health and senior services.

We consider the plain language of each diagrammed section below.

**[a] "give rise to the presumption . . . provided for in subsection 1"** of section 577.037: This refers to the presumption that "the person was intoxicated at the time the specimen was taken," which is not an issue in this case.

**[b] "to have the effect provided for in"** section 577.037.1: BLACK'S LAW DICTIONARY 514 (6th ed.1990) defines, in part, the "effect" of a statute as "[t]he result . . . which a statute will produce upon the existing law, as discovered from the language used[.]" The "effect" provided for in section 577.037.1 is, to deem the chemical analysis of a person's breath, blood, saliva or urine admissible to prove a BAC in excess of .08 percent in a license suspension or revocation proceeding pursuant to the provisions of chapter 302—the very issue in this case.

**[c] "shall":** This "effect" of admissibility is followed by "shall," meaning that for the chemical analysis of blood to be admissible to prove the amount of alcohol in the person's blood at the time of the act alleged, there must be compliance with the provisions following, which provisions we have diagrammed as [d] and [e]. *See State ex rel. Scott v. Kirkpatrick,* 484 S.W.2d 161, 164 (Mo. banc 1972) (explaining, "the word 'shall' in its legal connotation is accepted as a mandate calling for compliance").

**[d] "have been performed as provided in sections 577.020 to 577.041":** The chemical analysis must be done in accordance with Missouri's Implied Consent Law. This [d] requirement is joined with [e] by "and," meaning both requirements must be complied with for [a] or [b] to

occur. The key requirement in the Implied Consent Law impacting this case is the requirement in section 577.041 that once a test is refused "none shall be given."

**[e] "in accordance with methods and standards approved by the state department of health and senior services":** The cases discovered by this court concerning admissibility of chemical analyses of BAC concerned the issue of whether these methods and standards were complied with. *See, e.g. Todd v. Lohman,* 911 S.W.2d 321 (Mo.App. W.D.1995). That is not an issue in this case.

Applying this interpretation of section 577.037 to Murphy's case, we conclude, based on the plain language of the controlling statutes, that Trooper Kelly's action in having Murphy's blood sample drawn despite Murphy's explicit refusal under section 577.041 renders the results of the toxicology test inadmissible under section 577.037 to prove that Murphy's BAC was in excess of .08 percent in the proceeding to revoke his license under Chapter 302.

As already set forth above, sections 577.020 to 577.041 govern the authority of law enforcement to administer chemical tests such as the blood test at issue here. Once implied consent is negated by an arrested driver's invocation of the right of refusal under section 577.041, law enforcement's authority to draw blood is expressly cut off by the legislative directive that "none shall be given." In other words, the driver's express refusal vitiates implied consent. Thus, when Trooper Kelly ordered paramedics to draw a sample of Murphy's blood despite his refusal, the chemical analysis on the blood so drawn was not "performed as provided in sections 577.020 to 577.041," as required by section 577.037.4 to have the effect of admissibility provided in section 577.037.1.

**Exigent Circumstances**

The Director further argues that even if the evidence of blood alcohol content was obtained illegally, Trooper Kelly could direct that a sample of Murphy's blood be drawn pursuant to the exigent circumstances exception to the warrant requirement. The Director relies on *Schmerber,* 384 U.S. at 771, 86 S.Ct. 1826, *State v. LeRette,* 858 S.W.2d 816 (Mo.App. W.D.1993), and *Smith,* 134 S.W.3d at 36. These criminal cases are all distinguishable.

In *LeRette* we recognized that the warrantless draw of blood, without consent, does not violate the Fourth Amendment's prohibition of unreasonable seizure when exigent circumstances exist. 858 S.W.2d at 819. Exigent circumstances arise from the need to move quickly because "the percentage of alcohol in the bloodstream diminishes with time and ... the delay caused by having to obtain a warrant might result in the destruction of evidence." *Id.* This judicially crafted exception to traditional Fourth Amendment protections is necessary to ensure that the purpose of the criminal law being enforced is not frustrated—the purpose being to punish drunk drivers with criminal sanctions of imprisonment and fines.

However, *LeRette's* analysis of the exigent circumstances exception to Fourth Amendment requirements is not applicable to our case because Murphy is not seeking the exclusion of evidence due to Fourth Amendment violations. His complaint is that the plain language of the applicable statutes requires exclusion of the test results in the proceeding to revoke his license.

Additionally, the situation is much different in the context of a civil license revocation proceeding, where the focus is on the privilege of driving rather than punish-

ment. "Destruction of the evidence," i.e., a diminishing alcohol content, is not necessarily a factor because if a driver refuses a blood test, as the law gives him the right to do, his license can still be revoked. § 577.041. A test result is not necessary. Thus, the purpose behind the law being enforced—quickly getting drunk drivers off the street—is not frustrated by disallowing the use of illegally obtained test results.

Our statutes clearly give a driver the choice to take or refuse a chemical test with the understanding that, if he refuses, his driving privilege is automatically lost. The law was fashioned so that the result of a chemical test performed in spite of a refusal is not only inadmissible in a revocation proceeding, it is unnecessary.

## Conclusion

Murphy's point on appeal is granted. The trial court erred in admitting the blood test results to establish Murphy's BAC was in excess of .08 percent for revocation of Murphy's driving privileges under section 302.505. The trial court's judgment sustaining the Director's revocation of Murphy's driver's license is reversed.

ELLIS, P.J., and SPINDEN, J., concur.