William A. TUGGLE, Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Appellant.

No. WD 38654.

Missouri Court of Appeals, Western District.

March 17, 1987.

William L. Webster, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Jefferson City, for appellant.

Philip Dale Barrett, Kirksville, for respondent.

Before CLARK, and NUGENT and LOWENSTEIN, JJ.

PER CURIAM.

The Director of Revenue appeals from a judgment of the circuit court rescinding a determination made by the Department of Revenue to suspend William A. Tuggle's driving privileges in accordance with §§ 302.500–.540.[1] Following a trial de

---

1. Revised Statutes of Missouri (Cum.Supp.1984). (All sectional references are to the Revised Statutes of Missouri, 1978, as amended, unless otherwise indicated.)

novo, the court found that the state had failed to establish as an element of its burden of proof that Tuggle was driving a motor vehicle. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976) (en banc), provides the standard of review on appeal, and because the trial court erroneously applied the law in considering the sufficiency of the evidence we reverse the judgment.

An officer arrived at the scene of a traffic accident only moments after the accident occurred and found that a vehicle had been struck from behind. Mr. Tuggle was standing to the rear of that vehicle. When the officer approached and asked him what had happened, he said that he was on his way home and he had hit the parked vehicle.

While talking with Mr. Tuggle, the officer detected the odor of alcohol on his breath and he noted that his speech was somewhat slurred and hesitant and his balance somewhat impaired. No alcoholic beverage containers were found in or around Mr. Tuggle's car. After a field sobriety test, the officer found Mr. Tuggle's performance to be unsatisfactory and arrested him for driving while intoxicated. A breathalyzer test showed his blood alcohol content to be twenty-hundredths (.20) of one percent. Although the specific time cannot be ascertained from the record, Mr. Tuggle was released from police custody with his driving privileges intact. The arresting officer personally served him with a notice of suspension two days after the arrest and Mr. Tuggle surrendered his license to the officer at that time. After hearing the trial de novo, the judge ruled that the director had failed to meet his burden of proof and reinstated Mr. Tuggle's drivers license.

■ Specifically, the director must show, inter alia, that probable cause existed to believe that an alcohol related traffic offense has occurred. *Stewart v. Director of Revenue,* 702 S.W.2d 472, 475 (Mo.1986) (en banc). Here the trial judge, relying upon *Kansas City v. Verstraete,* 481 S.W.2d 615 (Mo.App.1972), found that Mr. Tuggle's extrajudicial admission standing alone was insufficient to establish his operation of the motor vehicle.

In *Verstraete, supra,* this court overturned a municipal ordinance conviction for driving under the influence of alcohol on the ground that uncorroborated extrajudicial statements of an accused are not admissible to show guilt absent independent proof of the corpus delicti. Here, the trial court applied this rule with the same exclusionary effect. But that application fails to recognize the distinctions between *Verstraete* and this case. *Verstraete* was a criminal case in which the objectionable evidence was offered to establish guilt, whereas this is a civil proceeding in which the challenged evidence was offered for the purpose of establishing probable cause. § 302.535.1; *Collins v. Director of Revenue,* 691 S.W.2d 246, 254 (Mo.1985) (en banc).

In a similar context, this court held in *Tolen v. Missouri Department of Revenue,* 564 S.W.2d 601, 602 (Mo.App.1978), that the rules of evidence in criminal cases are inapplicable to administrative driver's license proceedings. In such a civil action the corpus delicti rule does not prohibit the reception of an extrajudicial statement to prove that police officers had reasonable grounds to believe that a suspect had operated his motor vehicle while intoxicated. Thus, Tolen's admission to the arresting officer that he had been driving properly served to support both his arrest for driving while intoxicated and the subsequent revocation of his driver's license upon his refusal to submit to a breathalyzer test.

Mr. Tuggle first seeks to discount our holding in *Tolen* by labeling it as "dicta." Inasmuch as the admissibility of Tolen's extrajudicial statement was the decisive factor in the case in that it provided the only evidence establishing Tolen's intoxication at the time he drove the vehicle, that contention clearly fails. He next notes that the revocation in *Tolen* was based upon § 577.050 (now § 577.041), which requires the officer to have had "reasonable grounds" to believe that the operator was driving while in an intoxicated condition. Here, on the other hand, the suspension

was under § 302.505.1, which, as interpreted by the court in *Collins, supra,* at 252, requires the officer to have had "probable cause" to believe that the person arrested was driving in violation of the criminal statutes governing driving while intoxicated. He then asserts that the "reasonable grounds" standard under § 577.050 is far different than the "probable cause" standard of § 302.505.1; that "probable cause" is a term of art used almost exclusively in criminal cases; and that we are thus constrained to assume that the legislature used the term advisedly with the intention that the criminal law standards be met.

This argument, designed to render *Tolen* inapposite to the case at bar, misses the mark. First, as their respective definitions show, the perceived disparity between "reasonable grounds" and "probable cause" is illusory. In *Black's Law Dictionary* 1081 (5th ed. 1979), "probable cause" is described as: "Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings complained of." Similarly, "reasonable grounds" is defined in terms of probable cause. *Black's, supra,* at 1138. Thus, no greater showing of the officer's belief is required by § 302.505.1 than by § 577.050. Furthermore, even assuming, arguendo, that "probable cause" is a criminal law concept distinguishable from "reasonable grounds", Mr. Tuggle's argument, implying that the legislature's use of "probable cause" rendered the criminal rules of evidence applicable to this proceeding is fallacious. "Probable cause" refers to the quality and quantity of proof tending to establish a certain thing—here, the officer's belief. It does not delineate or proscribe the type of evidence that can be used to establish such proof.

■ In further argument in support of the trial court's reinstatement of his license, Mr. Tuggle implies that the evidence, even if deemed adequate to establish his operation of the vehicle, was insufficient to show that he was intoxicated at the time he drove it. This contention fails in light of the officer's unrefuted testimony that he arrived on the scene within a very few minutes of the accident and that no intoxicating beverage containers were found at the scene. Such evidence is sufficient to support even the higher evidentiary standard required in criminal cases. *See State v. Johnston,* 670 S.W.2d 552, 556–57 (Mo.App.1984); *State v. Davison,* 668 S.W.2d 252, 254–55 (Mo.App.1984).

■ Finally, Mr. Tuggle urges an alternative ground for affirming the trial court's ruling in his favor. Noting first that in court-tried cases such as this the judgment will be affirmed if sustainable on any reasonable theory, *Kansas City v. St. Paul Fire & Marine Ins. Co.,* 639 S.W.2d 903, 904 (Mo.App.1982), he contends that the arresting officer failed to comply with the requirements of § 302.520.1 in serving notice of the suspension and that the deviation was fatal to the suspension.

That section provides as follows:

Whenever the chemical test results are available to the law enforcement officer while the arrested person is still in custody, and where the results show an alcohol concentration of thirteen-hundredths of one percent or more by weight of alcohol in his blood, the officer, acting on behalf of the department, shall serve the notice of suspension or revocation personally on the arrested person.

The evidence in this case confirms Mr. Tuggle's assertion that, although the officer had the breathalyzer results while he was still in custody, the officer did not serve him with notice of suspension at that time. The officer explained that, although it had been ordered, the paperwork necessary for the issuance of the notice had not been received by the department. He indicated that he obtained the appropriate paperwork and personally served the notice of suspension within two days.

Emphasizing the mandatory language of the statute, Mr. Tuggle asserts that noncompliance with the requirement of personal service where a qualifying breathalyzer result becomes known during the period of custody precludes later service. Accordingly, he claims that his suspension should be dismissed. Although recognizing that

the statutory scheme provides, in § 302.-515, for an alternative method of service by the department itself if notice was not previously served by the officer as required by § 302.520, Mr. Tuggle maintains his contention that, inasmuch as the service here also did not conform to the procedure set forth there, his suspension cannot stand. We disagree.

The issuance, suspension and revocation of driver's licenses by the Department of Revenue are administrative functions flowing from the police power of the state to regulate driving in the interest of public welfare and safety. *Williams v. Schaffner*, 477 S.W.2d 55, 56 (Mo.1972) (en banc); *White v. King*, 700 S.W.2d 152, 155 (Mo. App.1985); *State v. Byerly*, 522 S.W.2d 18, 21 (Mo.App.1975). The overriding purpose of the administrative driver's license proceedings is to protect the public from drunk drivers. *Id.* In keeping with that intent, we believe that the significance of the mandatory language in the statutes providing for service of notice is that it eliminates the element of discretion in determining whether suspension or revocation is appropriate and, perhaps more importantly, it serves to get the dangerous driver off the streets in the most timely manner.

Mr. Tuggle was not prejudiced by the delayed notification and it does not invalidate the propriety of his suspension.

Accordingly, we reverse the judgment and direct the reinstatement of the Department of Revenue's order suspending Mr. Tuggle's license.