**Phillip V. SALADINO, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 60330.**

Missouri Court of Appeals, Western District.

Aug. 27, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied Nov. 26, 2002.

Michael Wambolt, Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, for Appellant.

Donald W. Petty, Liberty, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR. and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

The Director of Revenue appeals the trial court's judgment reinstating Mr. Phil-

lip V. Saladino's driving privileges. This court finds that the Director made a prima facie case for license revocation under Section 577.041 RSMo.[1] Because the Director made a prima facie case under § 577.041, we reverse.

## I. Factual and Procedural Background

At about 2:35 a.m. on January 25, 2001, Kansas City, Missouri, police officer, Mark Fugate, responded to an injury accident approximately one mile east of 350 Highway and Noland Road in Jackson County. When he arrived on the scene, Officer Fugate saw that a vehicle had left the road, gone down an embankment, and come to rest approximately four feet off the ground on a culvert. He noticed skid marks on the road. The area around the crash site was heavily wooded.

Officer Fugate identified the crashed vehicle as a white 1999 Ford pickup truck. He observed severe damage to the truck including heavy body damage, broken windows, and severe undercarriage damage. Officer Fugate approached the truck and found respondent, Mr. Saladino, "kind of laying" on the front seat. Mr. Saladino was semi-conscious and appeared to have head injuries. Officer Fugate saw blood in Mr. Saladino's nose and mouth, as well as inside the back seat of the truck. Although officer Fugate neither witnessed the accident nor saw Mr. Saladino driving the truck, he did not see anyone other than Mr. Saladino inside the truck when he arrived.

After rescue crews freed Mr. Saladino from the truck, Officer Fugate saw that Mr. Saladino had difficulty standing on his own, that he "basically, almost refused to stand up," and that he was not very coherent. Mr. Saladino slurred his speech, making him "somewhat difficult to understand." Mr. Saladino's attitude fluctuated from "combative, uncooperative, fighting, kind of sleepy." Officer Fugate smelled the strong odor of an intoxicating beverage on Mr. Saladino's breath.

Because of the terrain and Mr. Saladino's medical condition, Officer Fugate did not administer any field sobriety tests. However, before the ambulance took Mr. Saladino to the hospital, Officer Fugate told Mr. Saladino that he was under arrest for the suspicion of driving while intoxicated. Officer Fugate also told Mr. Saladino that he would ask Mr. Saladino to take a blood alcohol content (BAC) test upon arrival at the hospital. Because rescue crews had strapped Mr. Saladino to a backboard and had used a C-collar to stabilize his injuries, Officer Fugate did not handcuff or otherwise restrain Mr. Saladino.

After arriving at the hospital, Officer Fugate read Missouri's implied consent instructions[2] to Mr. Saladino before asking him to take the BAC test. Mr. Saladino refused to take the test. Further, he did not ask for an attorney.

Officer Fugate also attempted to question Mr. Saladino at the hospital.[3] Before

---

1. All statutory references are to RSMo (2000) unless otherwise indicated.

2. Officer Fugate read those instructions as follows: "You're under arrest for driving while intoxicated. To determine the alcohol or drug content of your blood, I'm requesting that you submit to a chemical test of your blood. If you refuse to take the test, your driver's license shall immediately be revoked

for one year. Evidence of your refusal to take the test may be used against you in a prosecution in a court of law. Having been informed of the reasons for requesting the test, will you take the test[?]"

3. Although officer Fugate's trial testimony suggests that he first read the implied consent warning and then the *Miranda* warning, the copy of his investigation report admitted at

doing so, he read to Mr. Saladino the *Miranda* warning. Mr. Saladino refused to answer any questions. Officer Fugate consequently told Mr. Saladino that he was "finished with him" and that Officer Fugate would submit his report and request an arrest warrant based upon Mr. Saladino's refusal to take the BAC test. Officer Fugate did not issue any traffic citations or summons to Mr. Saladino at the hospital.

Based upon Mr. Saladino's refusal to take the BAC test, the Missouri Director of Revenue notified him that his driver's license would be revoked for one year. Mr. Saladino then filed a petition for trial de novo in the trial court to review the Director's decision. At the close of the Director's case, Mr. Saladino moved the trial court to sustain his petition and to reinstate his driving privileges. He argued that the Director failed to meet the burden of establishing a proper arrest, the existence of probable cause to support an arrest, and that he refused to take the BAC test.

The trial court sustained Mr. Saladino's motion and ordered the Director to reinstate his driving privileges. The Director now appeals.

## II. Standard of Review

■ We review the trial court's judgment reinstating Mr. Saladino's driving privileges rather than the administrative order revoking those privileges. *See Reynolds v. Dir. of Revenue*, 20 S.W.3d 571, 574 (Mo.App. W.D.2000). In so doing, we apply the standard announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Id.* We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Callendar v. Dir. of Revenue*, 44 S.W.3d 866, 868 (Mo. App. W.D.2001). "In reviewing the judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Id.*

## III. Legal Analysis

■ To revoke Mr. Saladino's driving privileges under § 577.041, the Director had to prove three things by a preponderance of the evidence: 1) that Officer Fugate arrested Mr. Saladino, 2) that Officer Fugate had reasonable grounds to believe that Mr. Saladino had been driving in an intoxicated condition, and 3) that Mr. Saladino refused to take the BAC test. § 577.041.4. If the Director failed to prove one or more of the required elements under § 577.041, then the trial court should have reinstated Mr. Saladino's driving privileges. § 577.041.5; *see also Callendar*, 44 S.W.3d at 868.

On appeal, the parties do not dispute that Mr. Saladino refused to take the BAC test. We address the two remaining elements under § 577.041.

### Arrest

■ A proper arrest requires either actual restraint or submission to the arresting officer's authority. § 544.180 RSMo; *Callendar*, 44 S.W.3d at 868. An arrest does not occur merely because the officer announces the fact. *Callendar*, 44 S.W.3d at 868.

That said, it often makes little sense for the arresting officer to restrain an already-immobilized suspect following an injury-

---

trial states that he read the *Miranda* warning at 5:16 a.m. and then asked Mr. Saladino at 5:17 a.m. if he would submit to the BAC test.

accident. *See State v. Setter*, 721 S.W.2d 11, 17 (Mo.App. W.D.1986) ("There was no need to *physically restrain* respondent because his injuries prevented him from leaving the hospital."); *Knipp v. Dir. of Revenue*, 984 S.W.2d 147, 149, 151 (Mo.App. W.D.1998) (where suspect was trapped in a vehicle that had overturned in a ditch and where rescue workers had control of suspect's movement to the hospital, officer properly did not announce arrest until after suspect arrived at the hospital). Applying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries.

In this case, Officer Fugate twice announced Mr. Saladino's arrest. Each time that he did so, Mr. Saladino was strapped to a backboard wearing a C-collar on his neck. As in *Setter*, there was no need for officer Fugate to restrain Mr. Saladino because "his injuries prevented him from leaving ..." 721 S.W.2d at 17. Indeed, it was precisely because Mr. Saladino could not leave that Officer Fugate arrested him without handcuffing him.

We do not agree with Mr. Saladino that *Callendar v. Director of Revenue* compels a different conclusion. In *Callendar*, the police officer conceded that he had not intended to arrest the suspect and that the officer did not believe he had done so. 44 S.W.3d at 869. To neutralize this concession, the Director in *Callendar* essentially argued that the attending paramedics' restraint of the suspect should be treated after-the-fact as an "assertion of authority" by the officer, a proposition this court rejected. *Id.* at 869–70.

Mr. Saladino's case is significantly different from *Callendar*. Unlike the police officer in *Callendar*, who inadvertently announced an arrest while reading the mandated implied consent warning, Officer Fugate deliberately announced Mr. Saladino's arrest at the accident scene and again at the hospital. Each time, he refrained from handcuffing Mr. Saladino only because Mr. Saladino was already immobilized. Unlike the officer in *Callendar*, he also recorded the arrest on his report, further evidence that he asserted his authority over Mr. Saladino. *Cf. Setter*, 721 S.W.2d at 17–18 (officer intended to arrest suspect and would have handcuffed him and taken him to the police station if the suspect's injuries had not prevented him from leaving the hospital). Officer Fugate's direct assertions of authority, coupled with Mr. Saladino's corresponding inability to leave, distinguish this case from *Callendar*.

■ To the extent that this point turns on the order in which Officer Fugate administered the *Miranda* warning, we also reject Mr. Saladino's contention that he did not submit to Officer Fugate's authority because the request for a blood sample came before the *Miranda* warning. Contrary to Mr. Saladino's argument, Officer Fugate's report states that he administered the *Miranda* warning before reading the implied consent warning. Even if Officer Fugate had read the *Miranda* warning after placing Mr. Saladino under arrest, however, Officer Fugate's arrest would have been proper under the circumstances. *See Setter*, 721 S.W.2d at 13 ("The record indicates that respondent was placed under arrest *prior* to the *Miranda* warning ..."). For purposes of the trial de novo, the trial court must determine whether a proper arrest occurred, not whether the officer administered the *Miranda* warning in a particular order. The evidence in this case establishes a proper arrest.

**Reasonable grounds/Probable cause to believe that Mr. Saladino was driving**

■ The term "reasonable grounds" is virtually synonymous with the term "probable cause." *Wilcox v. Dir. of Reve-*

*nue*, 842 S.W.2d 240, 242 (Mo.App. W.D. 1992), *superseded by statute on other grounds as stated in State v. Cross*, 34 S.W.3d 175, 180–81 (Mo.App. W.D.2000) (citing *Tuggle v. Director of Revenue*, 727 S.W.2d 168, 170 (Mo.App.1987)). "Probable cause for arrest exists when an officer possesses facts which would justify a person of reasonable caution to believe that an offense has been or is being committed and that the individual to be arrested committed it." *Id.* (citing *Howard v. McNeill*, 716 S.W.2d 912, 915 (Mo.App.1986)). Probable cause turns upon the facts as they would have appeared from a prudent, cautious, and trained police officer's vantage point at the time of arrest. *Id.* at 243.

With regard to the second element, we emphasize that the Director was not required to prove that Mr. Saladino was driving, only that Officer Fugate had probable cause to believe that Mr. Saladino was driving. *See Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 621–22 (Mo. banc 2002). To form a belief amounting to probable cause, the arresting officer does not have to see the suspect driving. *Chinnery v. Dir. of Revenue*, 885 S.W.2d 50, 51 (Mo.App. W.D.1994) (citing *Williams v. Dir. of Revenue*, 743 S.W.2d 598, 599 (Mo. App. E.D.1988)). The officer may rely upon circumstantial evidence. *Id.* The officer may not rely upon "mere suspicion," however. *Cox v. Dir. of Revenue*, 37 S.W.3d 304, 307 (Mo.App. S.D.2000). "Probability and reasonableness characterize the concept of probable cause. Probable cause is a fluid concept and, as such, turns on the assessment of the probabilities in particular factual contexts." *Id.* (citation omitted).

Neither an unoccupied vehicle nor the absence of an admission from the suspect that he was driving preclude a finding of probable cause where sufficient circumstantial evidence points to the suspect as the driver. *See Cox*, 37 S.W.3d 304. In *Cox*, the Southern District held that an officer has probable cause to arrest a suspect for driving while intoxicated when the officer arrives after an accident and discovers the suspect badly injured and lying outside a heavily damaged truck belonging to the suspect. *Id.* at 308. This is true even though the suspect does not admit to driving, and no witness identifies him as the driver. *Id.*

In this case, as in *Cox*, there is simply no evidence that Mr. Saladino was not driving the truck. In many respects the circumstantial evidence in this case is stronger than such evidence in *Cox*. When Officer Fugate arrived at the accident scene, he discovered the truck off the road in a culvert. The logical inference from this circumstantial evidence was that the truck had been driven there. When Officer Fugate approached the truck, he discovered Mr. Saladino bleeding, injured, and alone in the front seat. The logical inference from this circumstantial evidence was that Mr. Saladino was the person who drove the vehicle off the road and that he sustained his injuries in the resulting crash. The truck's severe damage also supports this conclusion. In sum, "[t]his evidence plainly gives rise to a logical inference that [Mr. Saladino] was the driver. No other evidence exists which detracts from this inference." *Id.*

Having determined that Officer Fugate had probable cause to believe that Mr. Saladino was driving, we consider whether Officer Fugate had probable cause to believe that Mr. Saladino was doing so while intoxicated.

### Reasonable Grounds/Probable cause to believe that Mr. Saladino was intoxicated

Even where an officer does not administer field sobriety tests, he may ob-

tain probable cause to believe that the suspect is intoxicated from other sources of information. *Chancellor v. Lohman,* 984 S.W.2d 857, 858 (Mo.App. W.D.1998). Thus, an officer has probable cause to believe that a driver is intoxicated when the officer observes empty beer cans, smells alcohol on the driver's breath, and observes the driver's watery eyes and slurred speech. *Berry v. Dir. of Revenue,* 885 S.W.2d 326, 328 (Mo. banc 1994); *Cox,* 37 S.W.3d at 308 (evidence of intoxication included odor and empty beer cans found in and around truck). An officer likewise has probable cause when the suspect emits a strong odor of alcohol, wobbles when he gets out of the car, and almost falls down in the process. *Stenzel v. Dep't of Revenue,* 536 S.W.2d 163, 168 (Mo.App.1976) (driver admitted drinking but evidence of odor and wobbling furnished sufficient probable cause even without an admission). *See also Wilcox,* 842 S.W.2d at 241, 244 (although officer did not administer field sobriety tests because of concerns about suspect's condition and safety of location, probable cause still existed where suspect exuded the odor of alcohol, had very blood-shot eyes, required help removing his driver's license from his back pocket, and could barely stand).

The strong odor of alcohol on Mr. Saladino's breath in this case furnished Officer Fugate with sufficient probable cause to believe that Mr. Saladino was intoxicated. Such an odor is one of the classic indicia of intoxication. *See, e.g., Rain v. Dir. of Revenue,* 46 S.W.3d 584, 589 (Mo.App. E.D.2001). Mr. Saladino's slurred speech, incoherence, moodiness, and difficulty standing all represent further indicia of intoxication providing Officer Fugate with reasonable grounds to believe that Mr. Saladino was intoxicated.

## IV. Conclusion

Because the Director of Revenue met her burden to establish a prima facie case under § 577.041, we reverse the trial court's judgment.

HAROLD L. LOWENSTEIN, P.J., and JAMES M. SMART, JR., J., concur.