Robert EDWARDS, Appellant,

v.

DIRECTOR OF REVENUE, STATE of Missouri, Respondent.

No. SD 29451.

Missouri Court of Appeals, Southern District, Division One.

Nov. 3, 2009.

STATE of Missouri, Respondent,

v.

John M. Albright and Daniel T. Moore, Moore, Walsh & Albright L.L.P., Poplar Bluff, for Appellant.

James L. Spradlin, Jefferson City, for Respondent.

Before BATES, P.J., SCOTT, C.J., and BURRELL, J.

PER CURIAM.

Robert Edwards ("Driver") appeals from the trial court's judgment affirming a revocation of his driving privileges by the Director of Revenue ("the Director") after Driver refused to submit to a blood alcohol test, pursuant to §§ 577.020.1(1) and 577.041.4.[1] Driver argues that (1) there were no reasonable grounds for the arresting officer to believe Driver was intoxicated at the time of his one-vehicle accident, and (2) he was not arrested before being read the implied consent warning mandated by § 577.041. We affirm.

---

1. Statutory references are to RSMo Cum. Supp.2006 unless otherwise stated.

We "will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). "In reviewing the judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Callendar v. Dir. of Revenue*, 44 S.W.3d 866, 868 (Mo.App.2001).

While we defer to the trial court's determinations regarding credibility, when the evidence supporting revocation is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, there is no need to defer to the trial court's judgment. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). When the evidence is such that it could support two different conclusions depending on the weight given the evidence by the trial court, the appellate court defers to the judgment of the trial court. *Furne v. Dir. of Revenue*, 238 S.W.3d 177, 182 (Mo.App.2007).

"Under section 577.041, a person who refuses to take a breath test shall have [his or her] license revoked, but that person may request a hearing for review before a court in the county in which the stop or arrest [was made.]" *Dixon v. Dir. of Revenue*, 118 S.W.3d 302, 305 (Mo.App. 2003). At such a hearing, the trial court can only determine (1) whether the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe the person was driving a motor vehicle in an intoxicated condition; and (3) whether the person refused to submit to the chemical test. *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 584 (Mo. banc 2007); *Hinnah*, 77 S.W.3d at 620. "If the [trial] court

determines any issue not to be in the affirmative, the court shall order the Director to reinstate the license or [the] permit to drive." *Hinnah*, 77 S.W.3d at 620. The Director bears the burden of proof at the hearing. *Id.*; *see Swanberg v. Dir. of Revenue*, 122 S.W.3d 87, 90 (Mo.App.2003).

At around 8:30 p.m. on October 19, 2007, Officer Freeman of the Missouri State Highway Patrol responded to a one-vehicle accident on Highway 21 in Reynolds County. Driver, who was injured, was awaiting transport to the hospital when Officer Freeman arrived. Officer Freeman had "just a very, very short meeting" with Driver prior to Driver leaving the scene in an ambulance. While at the scene, Officer Freeman observed that Driver's vehicle appeared to have "traveled off the right side of the roadway. [Driver] had overcorrected and skidded off the left side of the roadway before overturning the vehicle." Officer Freeman found beer cans in and around the vehicle, some still cold to the touch. He specifically noticed several cans in the vehicle's cab, others next to the vehicle, and some empties that apparently had come out of the truck's bed. Some of the beer was unopened, some cans had burst open, and some were spraying beer from slight holes in the cans. Officer Freeman observed that the accident occurred in "a fairly straight portion of the roadway" and "[t]here didn't seem to be any reason at the scene that the vehicle would have been overcorrected so much." Deputy Stoops, the first officer to reach the accident, told Officer Freeman that Driver, who was being transported to the hospital, appeared to have been drinking and "very intoxicated."

Officer Freeman went to the hospital to speak with Driver. When Officer Freeman spoke with Driver, an hour or two after the accident, Driver was "still on the backboard from the ambulance on a gur-

ney ... inside the emergency room." Driver told Officer Freeman the accident occurred when he came across four or five deer in the roadway and he swerved to avoid them. Officer Freeman immediately noticed "a faint odor of intoxicants. I noticed [Driver's] eyes were watery and bloodshot. He was fairly combative with the hospital staff and the family members...." Officer Freeman smelled alcohol both on Driver's clothing and on his breath. He described Driver's speech as "slurred, loud, aggressive" and he was using a great deal of profanity.

In due course, Driver was taken away for x-rays for some two hours. Upon Driver's return, Officer Freeman asked him to take a portable breathalyzer test to determine his blood alcohol level. In response, according to Officer Freeman, Driver "caused a scene with his son. He was asking to take ... a chew of tobacco. Refused to take [the breathalyzer] unless he could have a chew of tobacco while he was taking it." Officer Freeman advised Driver, who was being "[a]ggressive or combative," that he could not chew tobacco before taking the breathalyzer. Officer Freeman also sought to employ the horizontal gaze nystagmus and other field sobriety tests, all of which Driver refused.

Officer Freeman then read Driver the "checklist on the Implied Consent [form]" found on page 2 of the Alcohol Influence Report ("AIR"), which advised Driver that he was under arrest; requested him to submit to a chemical test; warned him that if he refused to take the test his driver's license would immediately be revoked for a year; and warned him that evidence of his refusal to take the test could be used against him in a prosecution in a court of law. Driver repeated that he would not submit to a test of his breath or blood for alcohol. Driver signed the form entitled "Refusal to Submit to Alco-

hol/Drug Chemical Test[,] Notice of Revocation of your Driving Privilege[,] 15 Day Driving Permit." Officer Freeman then "issued [Driver] his 15–day driving permit" and explained "what he needed to do to get his ... hearing to get his driver's license back." Having been there "for a long time," Officer Freeman finally departed the hospital, mailing Driver a DWI ticket and summons several days later.

Pursuant to § 577.041.3 the Director revoked Driver's driving privileges for one year and Driver sought review in the circuit court. After a hearing at which Driver presented no evidence, the trial court ruled in favor of the Director.

## Point I

Driver claims the trial court erred in finding "there were reasonable grounds to believe [he] was intoxicated" because

> [Driver], who was run-off the road by deer, never admitted to drinking and, as [Officer Freeman] admitted, the odor of alcohol was explained by the ruptured cans spraying beer, bloodshot eyes are, at best, a thin clue, 90 [percent] of grown men cuss, which has nothing to do with intoxication, and [Driver's] combative behavior could well have been due to a head injury.

In determining whether an officer has reasonable grounds to revoke a person's driving privileges under § 577.041, a trial court must necessarily determine whether the arresting officer had reasonable grounds to believe the individual was driving while intoxicated. § 577.041. "Reasonable grounds and probable cause are essentially synonymous terms. Probable cause exists when an arresting officer 'possesses facts which would justify a person of reasonable caution to believe that an offense has been or is being committed and that the individual to be arrested committed it.'" *Routt v. Dir. of*

*Revenue*, 180 S.W.3d 521, 523 (Mo.App.2006)(quoting *Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 70 (Mo.App.2002))(internal citation omitted); *see Ethetton v. Dir. of Revenue*, 182 S.W.3d 260, 263–64 (Mo.App.2006). In making a determination of whether a police officer has probable cause to believe a person is driving while intoxicated, the trial court "must evaluate the evidence from the viewpoint of a cautious, trained, and prudent police officer at the scene at the time of the arrest." *Jones v. Dir. of Revenue*, 204 S.W.3d 709, 712 (Mo.App.2006); *see Hinnah*, 77 S.W.3d at 621. "Even where an officer does not administer field sobriety tests, he may obtain probable cause to believe that the suspect is intoxicated from other sources of information." *Saladino*, 88 S.W.3d at 70–71. What is at issue in a refusal case is whether the officer had reasonable grounds to believe the driver was intoxicated, not whether he was actually intoxicated. *Flaiz v. Dir. of Revenue*, 182 S.W.3d 244, 248 (Mo.App.2005).

▮▮ Here, there were several facts which support the trial court's conclusion that Officer Freeman had probable cause to believe Driver had been driving while intoxicated. First, Officer Freeman testified that he detected a faint odor of intoxicants not only on Driver's person, but also coming from his breath. *See Brown v. Dir. of Revenue*, 164 S.W.3d 121, 126 (Mo.App.2005)(odor of intoxicants as indicia of intoxication). Second, there were both empty and cold, unopened beer cans at the accident scene. *See Saladino*, 88 S.W.3d at 71 (empty beer cans as indicia of intoxication). Third, Officer Freeman testified that Driver's eyes were watery and bloodshot. *See Flaiz*, 182 S.W.3d at 249 (watery and bloodshot eyes as indicia of intoxication). Fourth, Officer Freeman testified that Driver was slurring his speech. *See Saladino*, 88 S.W.3d at 71 (slurred speech as indicia of intoxication). Fifth, Officer Freeman was told by Deputy Stoops, the first-responder, that Driver appeared to "have been drinking and been very intoxicated." Sixth, Driver's refusal to submit to field sobriety tests and a portable breathalyzer test are supportive of a reasonable belief that Driver was intoxicated. *See Flaiz*, 182 S.W.3d at 249; *see also Findley v. Dir. of Revenue*, 204 S.W.3d 722, 727–28 (Mo.App.2006). Seventh, Driver was argumentative, combative, and used a lot of foul language. *See Dixon*, 118 S.W.3d at 306. Further, Driver presented no evidence whatsoever and "the court may draw inferences adverse to a driver from a driver's failure to testify and present evidence." *Hursh v. Dir. of Revenue*, 272 S.W.3d 914, 917 (Mo.App. 2009).

While factors other than alcohol use could cause some of the aforementioned behaviors, it is not the province of this Court to reweigh the evidence. *Callahan v. Dir. of Revenue*, 878 S.W.2d 826, 827 (Mo.App.1993). The competent, substantial evidence presented supports the trial court's finding that Officer Freeman had reasonable grounds to believe Driver had been operating a motor vehicle while in an intoxicated condition. Point I is denied.

## Point II

Driver also asserts trial court error in finding that he "had been arrested in that an arrest is a statutory element that must occur but reading the implied consent ... warning, which assumes the arrest has already happened, is not sufficient to affect an arrest...." Specifically, Driver asserts he was never placed under arrest because Officer Freeman admitted that the only time he specifically told Driver that he was under arrest was when he read the implied consent warning form; Officer Freeman "never laid hands" on Driver during the

whole time he was in Driver's presence; and Officer Freeman "never mirandized him."[2]

The Director had to establish that Driver was "arrested or stopped" (§ 577.041.4), and § 544.180 defines "arrest" as "an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." *See also Brown*, 164 S.W.3d at 125. An arrest occurs when circumstances are such "that a reasonable person would believe that he or she is not free to leave; that is, when his or her person is seized by law enforcement authorities.'" *Hlavacek v. Dir. of Revenue*, 129 S.W.3d 374, 379 (Mo.App.2003)(quoting *Peters v. Dir. of Revenue*, 35 S.W.3d 891, 896 (Mo.App. 2001)). Although merely saying someone is under arrest is not enough without proof of physical restraint or submission to authority, "further physical restraint is impractical and unnecessary if the person is already physically immobilized or incapacitated." *Brown*, 164 S.W.3d at 125 (injured driver strapped to backboard in ambulance).

Driver cites *Callendar*, wherein the driver hit another car, and after fleeing that scene, caused a second, more serious accident. The responding officer found empty and full beer bottles inside the car. The driver was "groggy and lethargic," with eyes "dilated and glazed-over," and "a strong odor of alcohol" on her breath. 44

S.W.3d at 867. Given the driver's physical condition, the officer did not administer any field sobriety tests. When the driver was being treated by medical personnel, she "behaved belligerently and became combative" such that "the medical personnel applied restraints to hold her on the gurney in the ambulance." *Id.* At the hospital, the officer read the driver the implied consent warning form and asked her to submit to a blood-alcohol test, but she refused. The officer then left the hospital, having never attempted "to hand-cuff [the driver] or otherwise restrict her freedom in any way while at the hospital." *Id.* at 867. The Director revoked the driver's driving privileges, but after a review hearing, the trial court reinstated them "entirely on a finding that [the driver] had not been placed under arrest as required by § 577.041." *Id.* at 868.

On appeal, the Western District rejected the Director's claim that there was uncontroverted evidence that the driver had been placed under arrest:

The Director did not present sufficient evidence at the hearing to support a finding that [the officer] physically restrained [the driver] or that [the driver] submitted to any show of authority by him. While [the officer] testified that he told [the driver] that she was under arrest as a part of reading the implied consent warning to her, he specifically testified that he did not place [the driver] in handcuffs or otherwise restrict her liberty in any way. He further stated

---

**2.** The State apparently concedes, despite an unclear record, that Officer Freeman did not advise Driver of his rights under *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We note, however, that *"Miranda* warnings are not required in civil proceedings such as these, and a request for chemical testing does not involve the interrogation of an arrested person." *Williams v. Dir. of Revenue*, 277 S.W.3d 318, 322 (Mo. App.2009). "A person trying to decide

whether to submit to such testing has no constitutional right to counsel; no right to *Miranda* warnings; and no right to be told that he can consult with an attorney." *Id.; see also Sweatt v. Dir. of Revenue*, 940 S.W.2d 540, 543 (Mo.App.1997)("the right to request that a person take a breath test is not conditioned upon that person being advised of his rights under *'Miranda,'* or being told, when he is requested to take the test, that he can consult with an attorney").

that he did not believe he had placed her under arrest at the hospital. He said that he marked 'n/a,' meaning 'not applicable,' where the incident report form asked for the time of arrest because he had not placed [the driver] under arrest. He stated that he left the hospital after [the driver] refused to take the blood-alcohol test or to answer his questions and that she was free to leave the hospital. He also testified that he did not even issue a ticket to her at the hospital. Under these facts, we cannot say that the trial court erred in finding that [the driver] was not under arrest at the time she refused to take the blood-alcohol test.

The Director also attempts to claim that the actions of the paramedics in restraining [the driver] in the ambulance should satisfy the physical restraint requirement. However, the record does not indicate whether [the driver] continued to be restrained after arriving at the hospital. Moreover, the record does not reflect that [the officer] participated in this restraint or that the reason for the restraining [the driver] in the ambulance had anything to do with an assertion of authority to arrest.

*Id.* at 869 (internal citation and footnote omitted). Thus, the trial court "did not err in finding that the Director failed to prove by a preponderance of the evidence that [the driver] had been arrested at the time she refused the blood-alcohol test." *Id.* at 870.

There are some similarities between this case and *Callendar,* but the operative facts on the issue of arrest are quite different. The officer in *Callendar* never claimed that he arrested the driver at the hospital; to the contrary, he said he did not think he did so. *Id.* at 869. Thus, he marked the incident report form "time of arrest" as "n/a," because he had not placed the driver

under arrest. *Id.* at 869 & n. 1. Here, on the other hand, Officer Freeman testified he placed Driver under arrest and he filled out the AIR form. The driver in *Callendar* also received no paperwork prior to the officer's departure from the hospital. Here, after reading Driver the implied consent form and stating that he was under arrest, Officer Freeman issued him a notice of revocation of his driver's license, Driver signed the form, and he thereafter received a summons by mail. *Callendar* does not indicate that the driver there continued to be restrained once she arrived at the hospital. The short transcript in this case repeatedly refers to Driver being strapped to a backboard at various times while at the hospital. Officer Freeman also testified that he read to Driver page 2 from the AIR report which informed Driver he was under arrest, and later specifically informed Driver that he "was releasing him from my custody for medical treatment."

Driver also notes *Smither v. Dir. of Revenue,* 136 S.W.3d 797 (Mo. banc 2004), a case that seems to aid the Director more than Driver. There, an officer was dispatched to the site of a one vehicle accident. The driver, still in the wreckage, smelled of alcohol and had bloodshot eyes. At the hospital the driver admitted to the officer that he had been drinking, and a gaze nystagmus test indicated intoxication, but the officer did not administer other tests due to the driver's injuries. Rather, the officer informed the driver he was under arrest for DWI and read the *Miranda* warnings and the implied consent law warning. The driver refused to submit to a blood alcohol test and invoked his right to remain silent. The officer gave the driver a notice of revocation of driving privileges and a DWI summons, then left the hospital. Although the Director revoked the driver's driving privileges, a trial court reinstated them, specif-

ically finding that the driver "had not been arrested." *Id.* at 798.

The Missouri Supreme Court reversed, observing that "in the case of an injured suspect who is already immobilized or incapacitated, it is impractical to require officers to physically restrain the suspect further." *Id.* at 799. Indeed, " '[a]pplying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries.' " *Smither,* 136 S.W.3d at 799 (quoting *Saladino,* 88 S.W.3d at 69). The high court then reversed the trial court for the following reasons:

> [h]ere, [the driver] was taken by ambulance to the hospital emergency room, and although the exact extent of his injuries are not on the record, he was lying in an emergency room hospital bed after an accident that [the officer] characterized as 'serious.' At the least, his injuries prevented him from undergoing field sobriety tests that required physical activity, such as the 'walk and turn' test or the 'one leg stand' test. It is abundantly clear that at the time [the officer] informed [the driver] he was under arrest, [the driver] was not free to leave, not that he could have done so anyway because of his apparent incapacity. It also bears mention that after announcing the arrest, [the officer] read [the driver] the *Miranda* warning, read the implied consent warning and remained with him for nearly an hour before finally issuing a notice and summons. Under these circumstances, there was an 'actual restraint of the person of the defendant,' and for that reason an arrest was lawfully effectuated.

*Id.* at 799 (quoting § 544.180).

 Thus in *Smither,* as in the instant case, the driver was in a hospital bed and the driver's injuries prevented him from undergoing certain field sobriety tests that required physical activity. Here, as in *Smither,* an officer read Driver the implied consent form; he was informed he was under arrest by the officer; and the officer remained at the hospital with Driver for an extended period of time. Further, as in *Smither,* there was little evidence suggesting that Officer Freeman physically restricted Driver's freedom to leave. Nevertheless, Officer Freeman issued Driver a notice of revocation of his driver's license; Driver signed the revocation form; and Driver received his summons in the mail several days later. As in *Smither,* we can readily infer that Officer Freeman reasonably and correctly found no need to "lay hands on" Driver to arrest him, as Driver now urges, given Driver's condition and the hospital setting. For that matter, the record also supports the conclusion that Driver submitted to Officer Freeman's authority, which by statute and case law as noted above, is an alternative basis for effectuating an arrest.

The competent, substantial evidence presented supports the trial court's finding that Officer Freeman lawfully arrested Driver. Point II is denied, and the judgment is affirmed.