

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| JENA RAE HAFFNER, | ) | No. ED107926 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Richard M. Stewart |
| DIRECTOR OF REVENUE, | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 19, 2020 |

The Director of Revenue ("Appellant") appeals from the judgment of the Circuit Court of St. Louis County rescinding the suspension of Jena Rae Haffner's ("Respondent") driver's license. We reverse and remand.

## I. Background

This case began roughly at 2 a.m. on November 12, 2016. Respondent was driving home on Interstate 44 after meeting friends at a local restaurant. Evidence at trial later revealed that Respondent was driving with a blood alcohol content of .175%. Respondent struck another vehicle from behind, causing both drivers to lose control. Respondent's car hit an abandoned vehicle parked on the shoulder, flipped, landed on its roof, and slid across four lanes of traffic before coming to rest in the middle of the highway. Officer Velarde ("Officer Velarde") of the

Webster Groves Police Department responded to the crash and, seeing Respondent was injured, requested paramedics.

Before the paramedics arrived, Officer Velarde began investigating the crash scene. He spoke with Respondent, who informed him that she was the driver of the overturned vehicle. While speaking with Respondent, Officer Velarde noticed that her breath smelled like alcohol, she had watery, blood-shot eyes, her speech was slurred, and she seemed confused and disoriented. Officer Velarde asked Respondent if she had been drinking. Respondent was slow to answer Officer Velarde's question, but eventually stated, "I had some drinks with my friends[.] (sic) what's that have to do with anything [?] (sic) [Y]ou need to worry about getting all of my clothes off the road." Officer Velarde asked Respondent to walk to the curb and sit down. As Respondent attempted to sit on the curb, she lost her balance and almost fell over. Eventually, Officer Velarde had to handcuff Respondent for her own safety, because she kept attempting to re-enter the highway to collect items that were thrown from her car in the wreck. Officer Velarde testified that at this time Respondent was in his custody, but not under arrest. Officer Velarde did not conduct any field sobriety tests because of Respondent's injuries. When the paramedics arrived Officer Velarde removed the handcuffs so they could treat Respondent. Another officer, Officer Wunderlich ("Officer Wunderlich") arrived on scene. When the ambulance left to take Respondent to the hospital, Officer Velarde stayed at the scene and asked Officer Wunderlich to follow Respondent to the hospital to obtain a blood sample.

When Officer Wunderlich made contact with Respondent at the hospital, she was in a hospital bed with her neck stabilized. Officer Wunderlich read Respondent the Implied Consent Warning contained in the Missouri Department of Revenue Alcohol Influence Report ("Alcohol Influence Report"). This warning states, in pertinent part:

> *You are under arrest* and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated . . . condition. To determine the alcohol . . . content of your blood, I am requesting you submit to a chemical test of your . . . blood[.] If you refuse to take the test, your driver license will immediately be revoked for one year. Evidence of your refusal to take the test may be used against you in prosecution in a court of law. . . . (emphasis added)

Officer Wunderlich then asked Respondent for a blood sample to test her blood alcohol content and informed her that if she refused, her license would be immediately revoked. Respondent consented to the blood draw. Officer Wunderlich again Mirandized Respondent, and she stated that she understood her rights. Respondent remained in the hospital room while Officer Wunderlich went to retrieve a blood sample kit, and she later signed a separate hospital form consenting to the blood draw. A blood sample was taken, and it revealed Respondent had a blood alcohol content of .175%.

Pursuant to Section 302.505, RSMo., Respondent's license was suspended. She filed a petition for trial *de novo* in the Circuit Court for St. Louis County. A commissioner initially upheld the suspension of Respondent's license. A rehearing was granted on Respondent's motion, and the trial court found Respondent was not physically restrained and never submitted to the authority of any officer at the time she consented to the blood draw, and therefore was never arrested. Thus, the trial court reasoned, "[Appellant] failed to prove by a preponderance of the evidence that [Respondent] had been arrested at the time she submitted to the blood alcohol test." Accordingly, the trial court rescinded the suspension of Respondent's driver's license. Appellant filed a Motion to Amend the Judgment on March 22, 2019, and the trial court heard argument on the motion on April 19. The trial court denied Appellant's motion on May 22, 2019. This appeal follows.

3

## II. Discussion

Appellant raises one point on appeal, alleging that the trial court erred in finding it failed to prove by a preponderance of the evidence that Respondent was arrested at the time she submitted to the blood alcohol test. Appellant argues Respondent was arrested pursuant to Section 544.180 and <u>Smither v. Director of Revenue</u>, in that Respondent was injured in a serious crash, was told she was under arrest while hospitalized, agreed to provide a blood sample requested under Missouri's Implied Consent Law, and did not attempt to terminate the encounter with law enforcement. Thus, Appellant reasons Respondent was arrested by actual physical restraint, and by submission to Officer Wunderlich's authority.

### A. Standard of Review

We review the trial court's judgment in this case as we do any other court-tried civil case; the court's judgment will be affirmed unless "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." <u>Goforth v. Dir. of Revenue</u>, 593 S.W.3d 124, 126-27 (Mo. App. W.D. 2020) (quoting <u>White</u>, 321 S.W.3d at 307-8) "The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." <u>Smith v. Dir. of Revenue</u>, 594 S.W.3d 282, 284 (Mo. App. W.D. 2020). While we defer to the trial courts factual findings, however, the issue of whether the defendant was arrested under the facts found by the trial court is a question of law this Court reviews *de novo*. <u>Mills v. Dir. of Revenue</u>, 568 S.W.3d 904, 907 (Mo. App. W.D. 2019); <u>see</u> <u>Pearson v. Koster</u>, 367 S.W.3d 36, 44 (Mo. banc 2012) (noting that when presented with an issue of mixed questions of law and fact, the reviewing court defers to the factual findings made by the trial court so long as

4

they are supported by competent substantial evidence, but will review *de novo* the application of the law to those facts).

B.  Analysis.

**Point I:  Respondent was Under Arrest at the Time She Consented to the Blood Draw**

Appellant's sole point on appeal alleges the trial court erred in finding Respondent was not under arrest at the time she consented to the blood draw.  Appellant reasons that Respondent was arrested by actual physical restraint, and by submission to Officer Wunderlich's authority when he read her the Implied Consent Warning telling her she was under arrest, and she consented to the blood alcohol test.  We agree.

Revocation and suspension of drivers' licenses is governed by Section 302.505, which provides, "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while [intoxicated]. . . ."  Section 302.505.1.  For a suspect to be arrested, it is generally required that there be actual restraint of his or her person, or that he or she submit to the officer's custody.  Section 544.180.  Merely informing the suspect that he or she is under arrest is, generally, insufficient.  Smither v. Dir. of Revenue, 136 S.W.3d 797, 799 (Mo. banc 2004).  But in cases where there is an injured suspect already immobilized or incapacitated, courts have found further physical restraint is "impractical and unnecessary. . . ."  Brown v. Dir. of Revenue, 164 S.W.3d 121, 125 (Mo. App. E.D. 2005); Smither, 136 S.W.3d at 799 (citing Saladino v. Dir. of Revenue, 88 SW.3d 64, 68-69 (Mo. App. W.D. 2002)).  An individual submits to an officer's custody or authority where "he is told that he is under arrest and assents to the directions of the arresting officer without attempting to leave the premises."

<u>Minor v. Dir. of Revenue</u>, 136 S.W.3d 825, 827 (Mo. App. E.D. 2004) (quoting <u>State v. Nicholson</u>, 839 S.W.2d 593, 596-97 (Mo. App. W.D. 1992)) (internal quotations omitted).

*Respondent was Arrested by Actual Physical Restraint*

The trial court found that Officer Wunderlich "inadvertently" told Respondent she was under arrest but did not actually arrest her because he did nothing to physically restrain Respondent to effectuate the arrest. The trial court made this finding under the impression that Officer Wunderlich should have placed Respondent in handcuffs or otherwise restrained her freedom of movement by removing her from the hospital or taking her to jail. Such finding is a misapplication of the law.

In holding that Respondent was not arrested, the trial court relied on <u>Callendar v. Director of Revenue</u>. 44 S.W.3d 866. However, this reliance was misplaced because <u>Callendar</u> is wholly inapplicable to this case. While there were some facts in <u>Callendar</u> that are similar to this case—that the defendant was in a car accident and the officer followed her to the hospital where he eventually arrested her—the police officer in that case testified that "he did not believe he had placed [the defendant] under arrest at the hospital . . . that he marked n/a . . . where the incident report form asked for the time of arrest because he had not placed [the defendant] under arrest . . . [and] he stated that [the defendant] was free to leave the hospital." <u>Id.</u> at 878. In this case, however, there was no such testimony. Officer Wunderlich testified he decided not to handcuff Respondent at the hospital because of her injuries, and that he considered her under arrest at that time. Further, unlike the officer in <u>Callender</u> who wrote "n/a" under "time of arrest" on the Alcohol Influence Report, Officer Wunderlich listed the time of arrest as 2:15 a.m. Thus, <u>Callendar</u> does not apply to this case, and the trial court's reliance on it was misplaced.

6

In Smither v. Director of Revenue, the Supreme Court of Missouri decided a case with facts that are similar to the one before us, and we find that case instructive to our analysis here. 136 S.W.3d at 797. In that case, Smither was in a car accident, and a trooper who responded to the scene put him in an ambulance and followed the ambulance to the hospital. Id. at 798. The record was unclear as to the extent of Smither's injuries, but the trooper did not conduct field sobriety tests because of his injuries, and the trooper interviewed him at the hospital while he was in a hospital bed. Id. at 799. The trooper concluded Smither was intoxicated after interviewing him and conducting a "gaze nystagmus test." The trooper also Mirandized Smither and read him the Implied Consent Warning. Id. at 798. When Smither refused to provide a blood sample, his license was revoked for one year. Id. The trial court subsequently found that the director failed to show Smither had actually been arrested. Id.

On appeal, the Supreme Court of Missouri reversed, holding that while telling someone they are under arrest is generally not sufficient to actually effectuate an arrest, "in the case of an injured suspect who is already immobilized . . . , it is impractical to require officers to physically restrain the suspect further." Id. at 799. Additionally, the court noted, "applying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries." Id. (internal quotations omitted) (quoting Saladino, 88 S.W.3d at 69).

Here, similarly, Officer Velarde did not conduct field sobriety tests at the scene of the accident because of Respondent's injuries. When Officer Wunderlich arrived at the hospital, Respondent was in a hospital bed with a brace around her neck. Officer Wunderlich Mirandized Respondent and read her the Implied Consent Warning informing her that she was under arrest. Further, Officer Wunderlich testified that he decided not to handcuff Respondent only because of

7

her injuries, but that he considered her under arrest at that time. Respondent argues she was not sufficiently immobilized or incapacitated at the hospital such that further restraint was unnecessary, because she was not strapped to the hospital bed or otherwise immobilized. However, neither was the defendant in Smither, yet the Supreme Court held further physical restraint was unnecessary to effectuate an arrest. See id. Further physical restraint of Respondent to effectuate the arrest would have interfered with her treatment, and could have exacerbated her injuries.

Therefore, the trial court misapplied the law in finding that Respondent was not arrested by actual physical restraint. Further, such finding was not supported by substantial evidence and was against the weight of the evidence.

*Respondent was Arrested by Submission to Officer Wunderlich's Authority*

Even assuming *arguendo* that Respondent was not arrested by actual physical restraint, she was still arrested because she submitted to Officer Wunderlich's authority. The trial court reasoned that because Officer Wunderlich merely "requested" Respondent submit to a blood alcohol test, and the choice was completely voluntary, she did not submit to his authority in consenting to the blood test. Further, the trial court held that even if Respondent submitted to Officer Wunderlich's authority, such an arrest did not occur prior to her consent to the blood alcohol test. The trial court misapplied the law in making these conclusions, and both conclusions are against the weight of the evidence.

As discussed above, an individual submits to an officer's custody or authority where "he is told that he is under arrest and assents to the directions of the arresting officer without attempting to leave the premises." Minor, 136 S.W.3d at 827; See *C.f.* State v. Gabbert, 213 S.W.3d 713, 719 (Mo. App. W.D. 2007) (there is a fourth amendment seizure where an officer's

8

instructions indicate compliance might be compelled, and the suspect submits to that show of authority). Further, an arrest occurs "when surrounding circumstances are such that a reasonable person would believe that he or she is not free to leave; that is, when her person is seized by law enforcement authorities." Peters v. Dir. of Revenue, 35 S.W.3d 891, 896 (Mo. App. S.D. 2001). Respondent submitted to Officer Wunderlich's authority when he told her she was under arrest, asked her to take a blood alcohol test, told her that her license would be immediately revoked for one year pursuant to Section 577.041 if she refused to take the test, and she consented to taking the test. Both the trial court and Respondent argue that because the test was completely voluntary, and Respondent could refuse to take it, there was no show of authority by Officer Wunderlich to which Respondent could submit. But this argument ignores the fact that Officer Wunderlich told Respondent her license would be immediately revoked if she refused to take the blood alcohol test, after telling her she was under arrest. That is a show of authority, and Respondent submitted to that show of authority when she agreed to take the blood alcohol test and did not leave the premises. See Minor, 136 S.W.3d at 827 (an individual submits to an officer's custody or authority where he is told that he is under arrest and assents to the directions of the arresting officer without attempting to leave the premises).

Additionally, Respondent argues that a reasonable person in her position would have felt free to leave the hospital as soon as she was finished being treated, despite being told she was under arrest, because "Officer Wunderlich left the premises entirely and by extension left Respondent completely unattended while he went and retrieved a blood-draw kit from his police station." This argument fails. An arrest occurs "when surrounding circumstances are such that a reasonable person would believe that he or she is not free to leave; that is, when her person is seized by law enforcement authorities." Peters, 35 S.W.3d at 896; see Gabbert, 213 S.W.3d at

9

719 (there is a fourth amendment seizure where an officer's instructions indicate compliance might be compelled, and the suspect submits to that show of authority). The surrounding circumstances in this case were that Respondent was told by Officer Wunderlich that she was under arrest, and that her license would be immediately revoked if she did not consent to a blood alcohol test. No reasonable person would feel free to leave under those circumstances. Further, Section 575.150 makes it a criminal offense to flee from an arrest, stating in pertinent part:

> A person commits the offense of resisting . . . arrest . . . if he or she knows or reasonably should know that a law enforcement officer is making an arrest . . . , and for the purpose of preventing the officer from effecting the arrest . . . , he or she:
>
> (1) Resists the arrest . . . **by fleeing from such officer**. . . .

Section 575.150.1(1) (emphasis added). Respondent was arrested, consented to the blood draw, and was found to have a blood-alcohol content more than twice the legal limit. Thus, the trial court misapplied the law in finding Respondent was not arrested by submission to Officer Wunderlich's authority.

Finally, we address the trial court's conclusion that even if there was an arrest under these facts, such arrest did not occur before Respondent consented to the blood-draw. The evidence at trial showed that Respondent verbally consented to the blood alcohol test to Officer Wunderlich, then signed a separate hospital form consenting to the test. All of this occurred before any blood sample was taken. Thus, the trial court's conclusion that no arrest occurred prior to the blood draw was against the weight of the evidence.

Therefore, because Respondent was arrested by actual physical restraint and by submission to Officer Wunderlich's authority, the trial court erred in reinstating her license based on its finding that Respondent was not arrested before consenting to the blood draw. Appellant's point is granted.

10

## III. Conclusion

The decision of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.